The Honorable Robert J. Bryan

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:20-cv-203 |
| Plaintiff, | |
| v. | |
| KING COUNTY, WASHINGTON; DOW CONSTANTINE, in his official capacity as King County Executive | **PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| Defendants. | ORAL ARGUMENT REQUESTED |
| | NOTE ON MOTION CALENDAR: May 8, 2020 |

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

ARGUMENT ................................................................................................................................. 5

I.     THE EXECUTIVE ORDER VIOLATES THE DOCTRINE OF INTERGOVERNMENTAL IMMUNITY ........................................................... 5

II.    THE EXECUTIVE ORDER IS PREEMPTED BY FEDERAL IMMIGRATION LAW ................................................................................................................... 9

CONCLUSION ............................................................................................................................ 12

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - i
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. United States*,
    567 U.S. 387 (2012) ................................................................................................. 2, 10, 11

*Boeing Co. v. Movassaghi*,
    768 F.3d 832 (9th Cir. 2014) ............................................................................................ 6, 8

*City of Auburn v. Qwest Corp.*,
    260 F.3d 1160 (9th Cir. 2001) ........................................................................................... 10

*CTIA – The Wireless Ass'n v. City of Berkeley*,
    928 F.3d 832 (9th Cir. 2019) ....................................................................................... 10, 11

*Fong Yue Ting v. United States*,
    149 U.S. 698 (1893) ........................................................................................................... 10

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000) ............................................................................................................. 9

*GEO Grp., Inc. v. City of Tacoma*,
    2019 WL 5963112 (W.D. Wash. Nov. 13, 2019) ................................................................ 9

*Gladstone, Realtors v. Vill. of Bellwood*,
    441 U.S. 91 (1979) ............................................................................................................... 5

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir. 1990) ............................................................................................. 2

*Hancock v. Train*,
    426 U.S. 167 (1976) ............................................................................................................. 5

*In re Nat'l Sec. Agency Telecomms. Records Litig.* ("*NSA Litig.*"),
    633 F. Supp. 2d 892 (N.D. Cal. 2007) ................................................................................. 7

*Mayo v. United States*,
    319 U.S. 441 (1943) ............................................................................................................. 5

*McCulloch v. Maryland*,
    17 U.S. (4 Wheat.) 316 (1819) ............................................................................................. 1

*North Dakota v. United States*,
    495 U.S. 423 (1990) ......................................................................................................... 2, 5

*Sprint Telephony PCS, L.P. v. Cty. of San Diego*,
    543 F.3d 571 (9th Cir. 2008) ............................................................................................. 10

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - ii
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

*United States v. 14.02 Acres of Land, More or Less, in Fresno Cty.*,
  547 F.3d 943 (9th Cir. 2008) .................................................................................. 2

*United States ex rel. Knauff v. Shaughnessy*,
  338 U.S. 537 (1950) ......................................................................................... 10

*United States v. California*,
  314 F. Supp. 3d 1077 (E.D. Cal. 2018) .................................................................. 7, 8

*United States v. California*,
  921 F.3d 865 (9th Cir. 2019) ............................................................................... 8

*United States v. City of Arcata*,
  629 F.3d 986 (9th Cir. 2010) ......................................................................... 5, 6, 9

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
  454 U.S. 464 (1982) .......................................................................................... 5

*Washington v. GEO Grp., Inc.*,
  2018 WL 6448778 (W.D. Wash. Dec. 10, 2018) ......................................................... 9

**Constitutional Provisions**

U.S. Const., art. I § 8, cl. 3 .................................................................................. 2

U.S. Const., art. I § 8, cl. 4 .................................................................................. 2

U.S. Const., art. VI, cl. 2 ..................................................................................... 5

**Statutes**

8 U.S.C. § 1182 ................................................................................................ 10

8 U.S.C. § 1226 ................................................................................................ 10

8 U.S.C. § 1227 ................................................................................................ 10

8 U.S.C. § 1228 ................................................................................................ 10

8 U.S.C. § 1231 ................................................................................................ 10

**Rules**

Fed. R. Civ. P. 12(c) ........................................................................................... 2

**Other Authorities**

*Fact Sheet: ICE Air Operations*, https://www.ice.gov/factsheets/ice-air-operations .............. 2, 11

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - iii

*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

King County International Airport, *Airport Minimum Standards,*
https://www.kingcounty.gov/depts/transportation/airport/~/media/depts/
transportation/airport/planning/bfi-minimum-standards-2007.ashx ................................... 4, 8

Press Release, Apr. 23, 2019, "Executive Constantine Directs Actions Against ICE Detainee
Flights From King County Airport," https://www.kingcounty.gov/elected/executive/
constantine/news/release/2019/April/23-ICE-KCIA.aspx ...................................................... 1, 9

Press Release, May 2, 2019, "Operators at King County Airport Will Not Serve ICE Flights,
Leaving No Ground Support for Immigration Transfers,"
https://www.kingcounty.gov/elected/executive/constantine/news/release/2019/May/01-
KCIA-lease.aspx ....................................................................................................................... 4

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - iv
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

## INTRODUCTION

On April 23, 2019, King County ("the County") Executive Dow Constantine signed Executive Order PFC-7-1-EO ("the Executive Order"), "with the goal of banning flights of immigration detainees chartered by Immigration and Customs Enforcement" ("ICE") from King County International Airport, known popularly as Boeing Field.  Press Release, "Executive Constantine Directs Actions Against ICE Detainee Flights From King County Airport," Apr. 23, 2019 ("April 23 Press Release"), https://www.kingcounty.gov/elected/executive/constantine/news/release/2019/April/23-ICE-KCIA.aspx (last visited April 16, 2020) (cited in Complaint, ECF No. 1, ¶ 29); *see also* Answer, ECF No. 13, ¶ 29.  The Executive Order instructs County officials to include provisions in "all future leases, operating permits and other authorizations" at Boeing Field that prohibit servicing entities "engaged in the business of deporting immigration detainees," and to "[d]evelop procedures for exercising King County's rights under existing leases" to "ensure strict lessee compliance" with the Executive Order.  Compl., Ex. A ("Executive Order") ¶¶ 3–4.

On its face, the Executive Order violates a bedrock rule of constitutional law: that state and local governments "have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819).  This doctrine of intergovernmental immunity prohibits direct regulation of the Government, as well as discrimination against the Government and those with whom it deals.  The Executive Order flaunts these prohibitions.  Moreover, the Executive Order is preempted because it imposes an obstacle to the enforcement of federal immigration law.  By effectively denying ICE the use of a public airport on the same terms as the general public, the Executive Order interferes with the Government's right to determine the means by which those in the custody of immigration officials are detained and, if so ordered, removed from the country.

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - 1
*United States v. King County, WA*, No. 2:20-cv-203.

U.S. DEPARTMENT OF JUSTICE
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

1    These intergovernmental-immunity and preemption claims are appropriately resolved
2    through a motion for judgment on the pleadings, as there are no material facts in dispute and the
3    Government is entitled to judgment as a matter of law. *See Hal Roach Studios, Inc. v. Richard*
4    *Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990); *see also* Fed. R. Civ. P. 12(c).[1]
5    Accordingly, the Court should grant the United States' motion, declare the Executive Order
6    unconstitutional, and enjoin the County from enforcing it.[2]

## BACKGROUND

The Constitution recognizes the authority of the United States, as a sovereign nation, to regulate immigration by affording Congress the power to "establish an uniform Rule of Naturalization," U.S. Const., art. I § 8, cl. 4, and to "regulate Commerce with foreign Nations, and among the several States," U.S. Const., art. I § 8, cl. 3.  These provisions, coupled with the Supremacy Clause, give the United States broad authority to establish immigration laws, the execution of which the States and their political subdivisions cannot obstruct or discriminate against.  *See Arizona v. United States*, 567 U.S. 387, 394-95 (2012); *see also North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality); *id.* at 444–47 (Scalia, J., concurring). Congress has given the Executive Branch authority to inspect, investigate, arrest, detain, and remove aliens who are suspected of being, or found to be, unlawfully in the United States. *See* Compl. ¶¶ 18–19 (discussing the Immigration and Nationality Act).

ICE, through its Enforcement and Removal Operations ("ERO"), is the federal agency responsible for managing all aspects of the immigration enforcement process in the interior of the United States, including the logistics of removal.  ICE's Air Operations Division ("IAO")

---

[1] The Court may take judicial notice of matters of public record, such as the County's press releases, without converting a Rule 12(c) motion into one for summary judgment. *United States v. 14.02 Acres of Land, More or Less, in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008).

[2] Although only the Government's constitutional claims—not those under the Instrument of Transfer and Airline Deregulation Act—are addressed herein, this motion is dispositive of the action in its entirety.  Should this motion be denied, the Instrument of Transfer and ADA claims likely would benefit from factual development.

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - 2
*United States v. King County, WA*, No. 2:20-cv-203.

U.S. DEPARTMENT OF JUSTICE
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

1  supports ERO's mission by providing domestic and international air transportation of
2  immigration detainees. *See* Compl. ¶ 21 (citing U.S. Immigration & Customs Enforcement,
3  *Fact Sheet: ICE Air Operations*, https://www.ice.gov/factsheets/ice-air-operations (last visited
4  April 15, 2020)). Rather than operate its own fleet of planes, IAO charters Boeing 737s and
5  MD-80s to transport detainees within the United States. *See Fact Sheet*. Boeing Field in
6  Seattle, which is owned and operated by the County, Compl. ¶ 13; Answer ¶ 13, has long served
7  as a point of origin for IAO flights. *See Fact Sheet*.

8        The County admits it has put policies "in place to guarantee that [it] does not partner nor
9  collaborate with" ICE, such as "refus[ing] to honor [ICE] detention detainers without a valid
10 court order with regard to its correctional facilities." Executive Order, Preamble at 1. The
11 Executive Order takes that policy a step further. The County apparently "became aware" in
12 2018 "that aircraft operated by charter operators were providing services to [ICE] at the airport
13 and using [Boeing Field] as a location for transportation of immigration detainees." *Id.* The
14 Executive Order speculates that ICE's use of Boeing Field "could lead to human rights abuses
15 and violations in contravention of the policies and ordinances of King County and international
16 treaty obligations concerning human rights." *Id.* It further avers that the use of Boeing Field to
17 carry out immigration law "is inconsistent with the County's obligation to operate the airport in
18 a safe and efficient manner . . . and further use of [Boeing Field] in this manner would be
19 detrimental to the public welfare and could adversely affect the willingness or ability of other
20 persons to use, or engage in businesses at," Boeing Field. *Id.* at 1–2.

21       Purportedly to address these concerns, the Executive Order directs that Boeing Field
22 "shall not support the transportation and deportation of immigration detainees in the custody of
23 Immigration and Customs Enforcement, either traveling within or arriving or departing the
24 United States or its territories." *Id.* at 2. As pertinent to this motion, the Executive Order
25 directs the relevant officials within King County to:
26

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - 3
*United States v. King County, WA*, No. 2:20-cv-203.

U.S. DEPARTMENT OF JUSTICE
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

- "Take appropriate actions, consistent with the County's federal obligations, to minimize County cooperation with, facilitation of, and permission for, operations associated with transportation of immigration detainees."

- "Ensure that all future leases, operating permits and other authorizations for commercial activity at King County International Airport contain a prohibition against providing aeronautical or non-aeronautical services to enterprises engaged in the business of deporting immigration detainees (except for federal government aircraft), to the maximum extent permitted by applicable law";

- "Develop procedures for exercising King County's rights under existing leases at King County International Airport to ensure strict lessee compliance with applicable laws, ordinances, rules, regulations and policies of King County regarding human trafficking and the servicing of any aircraft engaged in the business of deportation of immigration detainees, including, without limitation King County Code Chapter 2.15 and this Executive Order";
 . . . .

- "Revise and formally adopt amendments to existing rules and regulations and King County Code Title 15 [which addresses the 'Airport'] in a manner consistent with King County Code Chapter 2.15 and this Executive Order."

*Id.* ¶¶ 1, 3–4, 6.

Shortly after signing the Executive Order, King County announced that, "[f]ollowing an April 23 Executive Order," the fixed base operator[3] that had been providing ground support for IAO flights, Modern Aviation, had informed the County it would "cease serving . . . flights carrying immigration detainees to and from King County International Airport."  Press Release, May 2, 2019, "Operators at King County Airport Will Not Serve ICE Flights, Leaving No Ground Support for Immigration Transfers," ("May 2 Press Release") https://www.kingcounty.gov/elected/executive/constantine/news/release/2019/May/01-KCIA-lease.aspx (last visited Apr. 16, 2020); *see also* Compl. ¶ 31 ("Since issuance of the Airport EO, the FBO at Boeing Field that once serviced flights by ICE's contractors and sub-contractors will no longer do so."). King County also claimed that "[t]he other two [fixed-base] operators at the airport indicated they will not pick up this service." May 2 Press Release. King County's statement included a link to the Executive Order. *Id.*

---

[3] Fixed base operators ("FBOs") "provide basic aeronautical services to charter flight operators."  Compl. ¶ 6; *see also* King County International Airport, *Airport Minimum Standards* 13 (defining "fixed base operator").  FBOs lease property at the Airport, and must obtain operating permits to perform specific services. *Airport Minimum Standards* at 36–50.

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - 4
*United States v. King County, WA*, No. 2:20-cv-203.

U.S. DEPARTMENT OF JUSTICE
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

# ARGUMENT

## I. THE EXECUTIVE ORDER VIOLATES THE DOCTRINE OF INTERGOVERNMENTAL IMMUNITY

"[T]he laws of the United States . . . shall be the supreme law of the land[.]" U.S. Const., art. VI, cl. 2. Intergovernmental immunity is a necessary corollary to this fundamental principle of constitutional law. It prohibits state and local governments from regulating "the activities of the Federal Government." *Hancock v. Train*, 426 U.S. 167, 178 (1976) (quoting *Mayo v. United States*, 319 U.S. 441, 445 (1943)). It also prohibits local laws that "discriminate[] against the Federal Government or those with whom it deals." *See North Dakota*, 495 U.S. at 435.

Claims of intergovernmental immunity can be resolved through a motion for judgment on the pleadings. For example, in *United States v. City of Arcata*, 629 F.3d 986 (9th Cir. 2010), two small California cities enacted laws that prohibited military recruitment of persons under the age of eighteen. The Government sued on both preemption and intergovernmental immunity grounds, and the district court awarded judgment on the pleadings on both theories. *Id.* at 988–89. On appeal, the defendants asserted that the ruling was premature because the Government "alleged only a hypothetical negative impact on federal recruiting objectives and thus ha[d] not shown the injury in fact necessary to confer standing."[4] *Id.* at 989. The Ninth Circuit rejected this argument, holding that because the Government was "the sole target of the challenged governmental action," and it was "undisputed that the cities would enforce the ordinances if they are upheld," it had shown "an imminent adverse impact." *Id.* at 989–90. The

---

[4] *City of Arcata* dispels the notion that this action is not ripe or that the Government lacks standing. *See* Answer, Affirmative Defenses, ¶¶ 3–4, 6 (asserting defenses of causation, ripeness, and lack of standing). All "Art[icle] III requires the party who invokes the court's authority to 'show [is] that he personally has suffered some actual *or threatened* injury as a result of the putatively illegal conduct of the defendant.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979)) (emphasis added). The Executive Order's directive to condition doing business at Boeing Field on not working with the Government, or its contractors, is more than sufficient to ground standing.

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - 5
*United States v. King County, WA*, No. 2:20-cv-203.

U.S. DEPARTMENT OF JUSTICE
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

Ninth Circuit then affirmed the district court's decision to enjoin the ordinance on intergovernmental immunity grounds, without reaching the preemption claim. *Id.* at 990–92. It agreed that the ordinances regulated the Federal Government because, "by their express terms," they "prohibit[ed] military recruiters from recruiting or attempting to recruit individuals under the age of eighteen." *Id.* at 991. And the Ninth Circuit also agreed that the ordinances "discriminate[d] against the United States" because they did "not affect the federal government incidentally as the consequence of a broad, neutrally applicable rule. Rather, they specifically target[ed] and restrict[ed] the conduct of military recruiters." *Id.*

Intergovernmental immunity also applies when state and local laws discriminate against those who cooperate with the Government, such as federal contractors, rather than against the Government itself. For example, in *Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014), the California legislature passed a law establishing cleanup standards for both radioactive and chemical contamination at a former Government research site in southern California. The Government had contracted with Boeing to undertake the cleanup. *Id.* at 836. Boeing sued California on an intergovernmental immunity theory. *Id.* at 838. The district court found that the statute was unconstitutional both because it directly regulated the Government and because it discriminated against the Government and its contractor. *Id.* at 838–43. The Ninth Circuit affirmed. With respect to the direct regulation claim, the Ninth Circuit held that it was not relevant that the Federal Government had hired Boeing to perform the cleanup; the state law was unconstitutional because it "mandate[d] the ways in which Boeing renders services that the federal government has hired Boeing to perform." *Id.* at 840. With respect to the discrimination claim, the Ninth Circuit observed that the statute imposed a significantly higher cleanup standard for the federal site than the standard California applied elsewhere in the state. *Id.* at 842. It concluded that a contractor, such as Boeing, "cannot be subjected to discriminatory regulations because it contracted with the federal government for the nuclear research and now the cleanup of radioactive contamination." *Id.* at 842–43.

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - 6
*United States v. King County, WA*, No. 2:20-cv-203.

U.S. DEPARTMENT OF JUSTICE
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

Intergovernmental immunity applies with equal force in the context of immigration enforcement, even in the absence of a direct contractual relationship between the Government and the cooperating private party. In *United States v. California*, 314 F. Supp. 3d 1077 (E.D. Cal. 2018), *aff'd in part & rev'd in part on other grounds*, 921 F.3d 865 (9th Cir. 2019), the district court concluded that the Government was "likely to succeed . . . under the intergovernmental immunity doctrine" on its challenge to provisions of California Assembly Bill (AB) 450 that "prohibit[ed] employers from providing voluntary consent to an immigration enforcement agent to enter nonpublic areas of a place of labor or to access, review, or obtain the employer's employee records," and that imposed "significant and escalating fines" on employers who chose to do so. *Id.* at 1093, 1096. The court held that the fines AB 450 imposed upon "employers who acquiesce in a federal investigation" were "a clear attempt to 'meddl[e] with federal government activities indirectly by singling out for regulation those who deal with the government.'" *Id.* at 1096 (quoting *In re Nat'l Sec. Agency Telecomms. Records Litig.* ("*NSA Litig.*"), 633 F. Supp. 2d 892, 903 (N.D. Cal. 2007)). Even though the employers had no formal relationship with the Government, the court rejected California's argument that intergovernmental immunity was limited to situations "concern[ing] laws that imposed burdens on entities contracting with, or supplying something to, the Federal Government, thus 'dealing' with the United States in an economic sense." *Id.* Rather, it held that "a law which imposes monetary penalties on an employer solely because that employer voluntarily consents to federal immigration enforcement's entry into nonpublic areas of their place of business or access to their employment records impermissibly discriminates against those who choose to deal with the Federal Government." *Id.*

King County is no less blatant in its desire to "meddl[e] with federal government activities" than the state and local governments whose laws were challenged in those cases. *Id.* (quoting *NSA Litig.*, 633 F. Supp. 2d at 903). The goal of the Executive Order is simple: a "[p]rohibition on immigrant deportations" at an airport that is, otherwise, open for the use and

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - 7
*United States v. King County, WA*, No. 2:20-cv-203.

U.S. DEPARTMENT OF JUSTICE
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

benefit of the public. Executive Order at 1 (title); *see also Airport Minimum Standards* 24 (lessees are required to furnish services "on a fair, equal, and non-discriminatory basis to all users" of Boeing Field). The Executive Order achieves this result by instructing County officials not to extend a lease, operating permit, or other airport authorization to anyone "providing aeronautical or non-aeronautical services to enterprises engaged in the business of deporting immigration detainees," Executive Order ¶ 3, and to exercise their "rights under existing leases" to "ensure strict lessee compliance" with "policies of King County regarding . . . the servicing of any aircraft engaged in the business of deportation of immigration detainees," including the Executive Order itself. *Id.* ¶ 4. It also mandates changes to the King County Code "consistent with . . . this Executive Order." *Id.* ¶ 6. These directives violate the intergovernmental immunity doctrine as articulated in *City of Arcata*, *Movassaghi*, *California*, and other cases in two ways.

      First, the Executive Order directly regulates the operations of the Government by "mandat[ing] the ways in which" the Government's contractors and subcontractors "render services that the federal government hired [them] to perform." *Movassaghi*, 768 F.3d at 840. Through its chosen mechanism of applying pressure to its current and future lessees, the Executive Order clearly regulates how immigration authorities carry out their duties. "[L]aws that directly *or indirectly* affect[] the operation of a federal program or contract" are proscribed by intergovernmental immunity. *California*, 921 F.3d at 880 (emphasis added); *see also California*, 314 F. Supp. 3d at 1096 (finding interference with relationship between immigration authorities and private firms asked to cooperate with searches deemed sufficient for purposes of intergovernmental immunity claim). The Executive Order affects the operation of ICE's transport and detention activities by barring the Government from use of a public air transit facility, thereby encroaching on its broad discretion in terms of how best to carry out detention and removal of immigration detainees.

      Second, the Executive Order discriminates against the Federal Government and those

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - 8
*United States v. King County, WA*, No. 2:20-cv-203.

U.S. DEPARTMENT OF JUSTICE
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

with whom it deals.  It singles out current and future lessees for unfavorable treatment based on whether they are providing, or might provide, "aeronautical or non-aeronautical services to enterprises engaged in the business of deporting immigration detainees." Executive Order ¶ 3.  It then directs County officials to deny leases and other necessary permits to those entities, and to use whatever tools are available under "existing leases" to bring about adherence to the policy of the Executive Order. *Id.* ¶¶ 3–4.  This was done with the express objective of making it impossible for immigration authorities to use Boeing Field. *Id.* Preamble 1–2; April 23 Press Release.  The Executive Order does "not affect the federal government incidentally as the consequence of a broad, neutrally applicable rule. Rather, [it] specifically target[s] and restrict[s] the conduct of" immigration officials and those who work with them, and "directly obstruct[s]" their law enforcement mission. *City of Arcata*, 629 F.3d at 991.[5]

For these reasons, the Executive Order runs afoul of the intergovernmental immunity doctrine and should be struck down.

## II. THE EXECUTIVE ORDER IS PREEMPTED BY FEDERAL IMMIGRATION LAW

The Supremacy Clause also prohibits state and local governments from enacting laws that are preempted by federal law.  As relevant here, if a local law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," it is unconstitutional under the doctrine of conflict preemption. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873 (2000).  Whether a state or local law is preempted is generally treated as a

---

[5] The Executive Order's targeting of federal immigration authorities distinguishes it from state and local laws that have survived intergovernmental immunity challenges. *GEO Grp., Inc. v. City of Tacoma*, 2019 WL 5963112, at *6 (W.D. Wash. Nov. 13, 2019) (upholding ordinance that applied the same restrictions on expansion to a federal contractor operating a detention facility that applied to state detention facilities located in the jurisdiction); *Washington v. GEO Grp., Inc.*, 2018 WL 6448778, at *3–4 (W.D. Wash. Dec. 10, 2018) (Bryan, J.) (rejecting federal contractor's intergovernmental immunity challenge to Washington's Minimum Wage Act, which "plac[ed] private firms that contract with the Federal Government on equal footing with all other private entities" in terms of minimum wage and was not "imposed . . . on any basis related to its status as a Federal Government contractor").

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - 9
*United States v. King County, WA*, No. 2:20-cv-203.

U.S. DEPARTMENT OF JUSTICE
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

question of law, which requires the court only to compare the federal and local provisions and thus does not require factual development. *See City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1172-73, 1177–80 (9th Cir. 2001) (considering federal conflict preemption argument for the first time on appeal because it "present[ed] a pure question of law"), *overruled on other grounds*, *Sprint Telephony PCS, L.P. v. Cty. of San Diego*, 543 F.3d 571 (9th Cir. 2008).

The Federal Government's authority to remove individuals from the United States is part of its inherent, sovereign authority to regulate immigration. *See Fong Yue Ting v. United States*, 149 U.S. 698, 707 (1893) ("The right of a nation to expel or deport foreigners who have not been naturalized, or taken any steps towards becoming citizens of the country . . . is as absolute and unqualified, as the right to prohibit and prevent their entrance into the country."). "Congress has specified which aliens may be removed from the United States and the procedures for doing so." *Arizona*, 567 U.S. at 396; *see, e.g.*, 8 U.S.C. § 1182 (grounds of inadmissibility); *id.* § 1226(c)(1) (authority for taking aliens into custody); *id.* § 1227 (grounds of deportability); *id.* § 1228 (administrative removal for aliens convicted of aggravated felonies); *id.* § 1231 (authority to detain and remove aliens subject to an order of removal, including authority to contract for detention facilities). In light of the "extensive and complex" nature of federal immigration regulations, one of the "principal feature[s] of the removal system is the broad discretion exercised by immigration officials" with respect to removal. *Arizona*, 567 U.S. at 395–96; *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("Executive officers may be entrusted with the duty of specifying the procedures for carrying out the congressional intent" with respect to exclusion of aliens). When state or local laws "violate[] the principle that the removal process is entrusted to the discretion of the Federal Government," they "create an obstacle to the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 407–10 (striking down on obstacle preemption grounds state law that authorized state officers to undertake warrantless arrests of individuals whom they had reasonable cause to believe had committed a removable offense); *see also CTIA – The Wireless*

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - 10
*United States v. King County, WA*, No. 2:20-cv-203.

U.S. DEPARTMENT OF JUSTICE
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

*Ass'n v. City of Berkeley*, 928 F.3d 832, 849 (9th Cir. 2019) (holding that "[w]hen Congress charges an agency with balancing competing objectives," as in the removal context, "it intends the agency to use its reasoned judgment to weigh the relevant considerations and determine how best to prioritize those objectives," and striking down a state law that "would interfere with the careful balance struck by Congress")

The Executive Order interjects the County into the Federal Government's discretionary decision-making process with respect to the logistics of removal. Congress has delegated to the Department of Homeland Security the authority to carry out final orders of removal, and ICE's operational judgment is that use of civilian air travel facilities is essential to its mission. *See Fact Sheet* (summarizing IAO's domestic and international operations). Local ordinances that effectively deny ICE access to the national airspace system on the same terms as the general public substitute the locality's judgment as to the conduct of detention and removal for that of the Government. All aspects of the removal process are "entrusted to the discretion of the Federal Government," and by meddling with the logistics of removal, the Executive Order "creates an obstacle to the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 395–96, 407. As such, it is preempted and should be set aside.

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - 11
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

## CONCLUSION

For these reasons, the Court should grant the Government's motion, declare the Executive Order unconstitutional, and enjoin its enforcement.

Dated:  April 16, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

BRIAN T. MORAN
United States Attorney

ALEXANDER K. HAAS
Director

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

 /s/ Michael J. Gerardi
Michael J. Gerardi (D.C. Bar No. 1017949)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW, Room 12212
Washington, D.C. 20005
Tel: (202) 616-0680
Fax: (202) 616-8460
E-mail: michael.j.gerardi@usdoj.gov

*Attorneys for Plaintiff*

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - 12
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

# CERTIFICATE OF SERVICE

The undersigned certifies that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system on April 16, 2020.

/s/*Michael J. Gerardi*
Michael J. Gerardi (D.C. Bar No. 1017949)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW, Room 12212
Washington, D.C. 20005
Tel: (202) 616-0680
Fax: (202) 616-8460
E-mail: michael.j.gerardi@usdoj.gov

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS - 13
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680