HONORABLE ROBERT J. BRYAN

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

UNITED STATES OF AMERICA,

10

Plaintiff,

11

v.

12

KING COUNTY, WASHINGTON; DOW
CONSTANTINE, in his official capacity as
King County Executive,

13

14

Defendants.

15
16
17
18
19
20
21
22
23
24
25

Case No.   2:20-cv-203 RJB

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR JUDGMENT ON
THE PLEADINGS

NOTED ON MOTION CALENDAR:
MAY 8, 2020

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1

2

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION .................................................................................................... 1

II.     FACTS ..................................................................................................................... 2

III.    ARGUMENT ........................................................................................................... 5

        A.      A Rule 12(c) Motion by a Plaintiff Is "Highly Irregular" and Must Be Denied
                Where the Answer Raises Issues of Fact or Affirmative Defenses. ...................... 5

        B.      The Pleadings Do Not Establish That the Government Has Standing...................... 6

                1.      The Pleadings Do Not Establish That the Government Has Suffered a
                        Concrete Injury. ...................................................................................... 7

                2.      The Pleadings Do Not Establish That the Government's Alleged Injury Is
                        Traceable to the County. .......................................................................... 8

                3.      The Pleadings Do Not Establish That the Government's Alleged Injury
                        Would Be Redressed by a Favorable Ruling in This Case. .......................... 8

        C.      The Pleadings Do Not Establish That the Government's Claims Are Ripe. ............. 9

                1.      The Pleadings Do Not Establish a Case or Controversy. ............................ 10

                2.      The Pleadings Do Not Establish Prudential Ripeness. ................................ 10

        D.      The County Operates the Airport as a Market Participant, Taking it Outside the
                Scope of Federal Preemption and the Intergovernmental Immunity Doctrine. ....... 11

        E.      The Pleadings Do Not Establish That the Airport EO Is Preempted. ...................... 13

        F.      The Pleadings Do Not Establish That the Intergovernmental Immunity Doctrine
                Bars the Airport EO. ............................................................................................ 16

                1.      The Airport EO Does Not Directly Regulate the Government. .................... 16

                2.      The Airport EO Does Not Discriminate Against the Government. ............... 17

        G.      The Pleadings Do Not Establish That the Government Is Entitled to Judgment in
                Light of the County's Tenth Amendment Affirmative Defense. ............................. 19

IV.     CONCLUSION ........................................................................................................ 21

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- i
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967)..................................................................................9

*Airline Serv. Providers Assoc. v. Los Angeles World Airports*,
    873 F.3d 1074 (9th Cir. 2017) ...........................................................12,13

*Arizona v. United States*,
    567 U.S. 387 (2012)................................................................................14

*Boeing v. Movassaghi,*
    768 F.3d 832 (9th Cir. 2014) ................................................................17

*Ctr. for Biological Diversity v. Export-Import Bank of the United States*,
    894 F.3d 1005 (9th Cir. 2018) ................................................................8

*City of Auburn v. Qwest Corp,*
    260 F.3d 1160 (2001)...............................................................................9

*Colwell v. Dep't of Health and Human Servs.*,
    558 F.3d 1112 (9th Cir.2009) .................................................................9

*Davis v. Michigan Dep't. of Treasury*,
    489 U.S. 803 (1989)................................................................................18

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
    498 F.3d 1031 (9th Cir. 2007) ..........................................................11, 12

*Galarza v. Szalczyk,*
    745 F.3d 634 (3d Cir. 2014)...................................................................20

*Geier v. Am. Honda Motor Co., Inc.,*
    529 U.S. 861 (2000)................................................................................14

*Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*,
    887 F.2d 228 (9th Cir. 1989) ..................................................................5

*GEO Grp., Inc. v. City of Tacoma*,
    No. 18-cv-5233, 2019 WL 5963112 (Nov. 13, 2019) ......................19

*Gerritsen v. Warner Bros. Entm't Inc.*,
    112 F. Supp. 3d 1011 (N.D. Cal. 2015)..................................................8

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- ii
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*Goldstein v. California*,
　　412 U.S. 546 (1973) ...................................................................................15

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
　　896 F.2d 1542 (9th Cir. 1989) ...............................................................5, 15

*Hite v. Pub. Util. Dist. No. 2*,
　　112 Wn.2d 456, 772 P.2d 481 (1989) .........................................................20

*Johnson v. Am. Home Mortg. Corp.*,
　　No 16-1085, 2017 WL 2909410 (C.D. Cal. May 8, 2017) ............................5

*Kelly v. Washington ex rel. Foss Co.*,
　　302 U.S. 1 (1937) ...............................................................................15, 16

*Koerner v. Grigas*,
　　328 F.3d 1039 (9th Cir.2003) .......................................................................7

*Lujan v. Defs. of Wildlife*,
　　504 U.S. 555 (1992) ...........................................................................6, 7, 8

*Medtronic, Inc. v. Lohr*,
　　518 U.S. 470 (1996) ...................................................................................14

*North Dakota v. United States*,
　　495 U.S. 423 (1990) .......................................................................11, 16, 17

*Pit River Tribe v. Bureau of Land Mgmt.*,
　　793 F.3d 1147 (9th Cir. 2015) .....................................................................5

*Reeves, Inc. v. Stake*,
　　447 U.S. 429 (1980) ...............................................................................11, 12

*Sprint Telephony PCS, L.P. v. County of San Diego*,
　　543 F.3d 571 (9th Cir. 2008) .......................................................................9

*Thomas v. Anchorage Equal Rights Comm'n*,
　　220 F.3d 1134 (9th Cir. 2000) .....................................................................9

*Union Pac. R.R. Co. v. Sacks*,
　　309 F. Supp. 3d 908 (W.D. Wash. 2008) ...............................................9, 10

*United States v. California* ("*California I*"),
　　314 F. Supp. 3d 1077 (E.D. Cal. 2018) .................................................14, 17

*United States v. California* ("*California II*"),
　　921 F.3d 865 (9th Cir. 2019) .............................................14, 17, 18, 19, 20

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- iii
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*United States v. City of Arcata*,
    629 F.3d 986 (2010)....................................................................................6, 7, 17

*Washington v. GEO Grp, Inc.*,
    283 F. Supp. 3d 967 (W.D. Wash. 2017)...............................................13, 14, 15

*Washington v. GEO Group, Inc.*,
    No. 17-cv-5806, 2018 WL 6448778 (W.D. Wash. Dec. 10, 2018) ...........................16, 17

*Washington v. United States*,
    460 U.S. 536 (1983)....................................................................................18

*W. Lynn Creamery, Inc. v. Healy*,
    512 U.S. 186 (1994)....................................................................................11

## Statutes and Rules

Fed. R. Civ. P. 12(c) ....................................................................................1, 5

Chapter 14.08 RCW....................................................................................15

RCW 14.08.120 ....................................................................................20

King County Code Chapter 2.15....................................................................................3

King County Code Title 15....................................................................................10

## Other Authorities

U.S. Const., amend. X....................................................................................2, 4, 19, 20

Wash. Const. art. XI, § 11....................................................................................15

Executive Order PFC-7-1-EO....................................................................................1, 2, 3, 4,
                                                                        7, 8, 10, 11,
                                                                        12, 13, 14, 15,
                                                                        16, 17, 18, 19, 20

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- iv
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

# I.    INTRODUCTION

By filing a motion under Federal Rule of Civil Procedure 12(c) for judgment on its own complaint, the federal government (Government) seeks to circumvent the entire litigation process and obtain judgment on the merits despite King County's denials and affirmative defenses, without having presented any evidence that it has standing, that its claims are ripe, or that would demonstrate its claims have merit.  The Government's motion asks too much.

Exercising its broad powers under Washington law as both a municipality and an airport operator, King County adopted Executive Order PFC-7-1-EO (Airport EO) in April 2019.  The Airport EO contains several directives, nearly all of which are prospective in nature.  For example, the Airport EO directs that all *future* leases and operating permits between the County and its tenants at King County International Airport (Boeing Field) contain a provision indicating that they will not provide services to "enterprises engaged in the business of deporting immigration detainees (except for federal government aircraft), to the maximum extent permitted by applicable law."  Dkt. 1-1, p. 3.  No such "*future* leases" have been executed.

After the Airport EO was adopted, the fixed base operators (FBOs) that provide aeronautical services at Boeing Field chose to not service Immigration and Customs Enforcement (ICE) flights.  A critical fact question exists as to the basis for the FBOs' decisions, because the Airport EO did not require those actions.  Discovery on this issue, and many others, is necessary before judgment on the merits may be reached.

The Government must establish standing and ripeness before the Court can resolve the case on the merits.  Given the involvement of the FBO third parties and the prospective nature of the Airport EO, the pleadings do not establish standing or ripeness and the motion must be denied for that reason alone.  But the Government's motion fails on the merits as well.  The County alleges it was acting as a market participant, not as a regulator, in managing the airport's operation and its relationships with its FBO tenants, taking its actions outside the scope of the Supremacy Clause.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 1
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700    FAX (206) 623-8717

Even if the market participant rule did not apply, the Airport EO is not preempted because the County alleges that its management of Boeing Field does not present a significant obstacle to the Government's deportation efforts.  Nor does the Airport EO violate the intergovernmental immunity doctrine because the County will prove that it does not directly regulate the federal government and because any variance in treatment under the Airport EO is justified by significant differences in the economic and operational effects between deportation flights and other types of flights occurring at Boeing Field.

Finally, the Tenth Amendment prohibits the Government from forcing the County to participate in the Government's deportation activities and therefore protects the County's actions.

For each of these reasons, the Government is not entitled to judgment on the pleadings.

## II.    FACTS

The King County Executive Office adopted the Airport EO on April 23, 2019.  Dkt. 1, p. 1, ¶ 1.  The Airport EO was adopted to address documented concerns by County officials and members of the public that the use of Boeing Field as a location for the transportation of immigrant detainees could lead to human rights abuses and, importantly, disrupt the County's proprietary interest in ensuring that the airport is operated in a safe and efficient manner.  Dkt. 1-1, pp. 2-4.  As the Airport EO explicitly provides, the continued use of Boeing Field for immigration flights jeopardized the "willingness or ability of other persons to use, or engage in businesses at" the airport, and impacted "the financial sustainability" of the Airport.  Dkt. 1-1, p. 3.

The Government argues the following four directives violate federal law:

1.    Take appropriate actions, consistent with the County's federal obligations, to minimize County cooperation with, facilitation of, and permission for, operations associated with transportation of immigration detainees.

3.    Ensure that all future leases, operating permits and other authorizations for commercial activity at King County International Airport contain a prohibition against providing aeronautical or non-aeronautical services to enterprises engaged in the business of deporting immigration detainees

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 2
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

(except for federal government aircraft), to the maximum extent permitted by applicable law.

4.      Develop procedures for exercising King County's rights under existing leases at King County International Airport to ensure strict lessee compliance with applicable laws, ordinances, rules, regulations and policies of King County regarding human trafficking and the servicing of any aircraft engaged in the business of deportation of immigration detainees, including, without limitation King County Code Chapter 2.15 and this Executive Order.[1]

6.      Revise and formally adopt amendments to existing rules and regulations and King County Code Title 15 in a manner consistent with King County Code Chapter 2.15 and this Executive Order.

*See* Motion at 4; *see also* Dkt. 1-1, pp. 3-4.  The County denies having taken any action to implement or enact any of the directives contained in the Airport EO, or that any of the directives has had any impact on the Government.  Dkt. 13, p. 2, ¶ 6; *id.* p. 5, ¶ 30.

By its terms, the Airport EO applies only to future leases (Dkt. 1-1, pp. 3-4) and the Government does not (and could not) plead that leases containing the terms complained of have been entered.  The Airport EO does not require that Boeing Field FBOs, or any other company that provides services to contractors engaged by ICE, immediately stop such services or terminate such contracts.  Dkt. 1-1, pp. 3-4.  Ignoring this critical limitation in the Airport EO, the Government alleges that "[b]y prohibiting Boeing Field lessees from 'providing aeronautical or non-aeronautical services to enterprises engaged in the business of deporting immigration detainees,' the Airport EO prevents ICE's contractors and sub-contractors from obtaining necessary aircraft services such as fuel and water at Boeing Field."  Dkt. 1, p. 8, ¶ 41.  The County denied this allegation.  Dkt. 13, p. 6, ¶ 41.  Given that the Airport EO only applies to *future* leases and permits, it is possible – and must be assumed for purposes of this motion – that the evidence will

---

[1] King County Code Chapter 2.15 is titled "Citizen and Immigration Status."  The Government does not assert that anything in Chapter 2.15 violates federal law.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 3
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1    demonstrate that the FBOs opted to not service ICE flights for their own independent business

2    reasons.

3            The County also denies that the Airport EO "has had a significant impact on ICE's

4    operations in the Northwest United States," or that the County's actions have "resulted in

5    significant fiscal and public safety costs impeding ICE operations."  Dkt. 13, pp. 5-6, ¶¶ 30, 33.

6    The Airport EO specifically exempts "federal government aircraft" from its scope, permitting the

7    Government to operate flights out of Boeing Field on federal aircraft.  Dkt. 13, p. 5, ¶ 32; Dkt. 1-1,

8    p. 3, ¶ 3.  And contrary to the Government's allegation, Boeing Field is not the closest airport to

9    the Northwest Detention Center in Tacoma—there are several airports closer, including Seattle-

10   Tacoma International Airport, Joint Base Lewis McChord, and Renton Municipal Airport.  Dkt.

11   13, p. 5, ¶ 32.  Nor did the County "force" the  Government to relocate its flights to Yakima.  Dkt.

12   13, p. 6, ¶ 33.  The Government's assertion that it relocated flights to Yakima (assuming such a

13   decision was made) as opposed to one of the many airports closer to Tacoma (those listed *infra* in

14   addition to at least Payne Field in Everett, Bellingham International Airport, and Portland

15   International Airport) was not a decision necessitated by the Airport EO (and thus that allegation

16   was denied, Dkt. 13, p. 6, ¶ 33), and instead was driven by other factors.

17           The County also asserted affirmative defenses relevant to the Government's motion,

18   including that (a) the Government lacks standing; (b) the Government's claims are not ripe; (c) the

19   County was acting as a market participant in adopting the Airport EO; and (d) the Tenth

20   Amendment bars the Government's claims.  Dkt. 13, p. 7, ¶¶ 2, 4-6.  Each must be resolved before

21   this case can be adjudicated on the merits, and resolution of each depends on the development of

22   facts in discovery.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 4
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

III.    ARGUMENT

**A.    A Rule 12(c) Motion by a Plaintiff Is "Highly Irregular" and Must Be Denied Where the Answer Raises Issues of Fact or Affirmative Defenses.**

While Rule 12(c) allows a plaintiff to move for judgment on the pleadings, such a move is "highly irregular." *See Johnson v. Am. Home Mortg. Corp.*, No. 16-1085, 2017 WL 2909410, at *1 (C.D. Cal. May 8, 2017). As the Ninth Circuit has recognized, "a judgment on the pleadings is a decision on the merits." *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). Judgment on the pleadings is proper only "when the moving party clearly establishes *on the face of the pleadings* that *no material issue of fact remains to be resolved* and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (emphasis added).

When considering a plaintiff's Rule 12(c) motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios*, 896 F.2d at 1550. As a result, "a plaintiff is not entitled to judgment on the pleadings if the defendant's answer raises issues of fact or affirmative defenses." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1159 (9th Cir. 2015); *Seventh-Day Adventists,* 887 F.2d at 230. Consequently, "[a] plaintiff will rarely satisfy [its] burden on the basis of the complaint alone." *Johnson*, 2017 WL 2909410, at *2.

Because the County's answer both denies the majority of the Government's allegations (meaning the Government's allegations are false for purposes of this motion) and asserts affirmative defenses which cannot be adjudicated on the pleadings, the motion must be denied.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 5
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1

**B.      The Pleadings Do Not Establish That the Government Has Standing.**

2

3        The Court may not adjudicate the merits of the Government's claims because the County

4   contests the Government's standing and the uncontested facts, as alleged, do not establish standing.

5   *See* Dkt. 13, p. 7, ¶ 6.  Standing is a threshold issue.  To prevail on the merits over a challenge to

6   its standing, the Government would have to produce evidence that (1) it has suffered an injury in

7   fact, (2) the injury is fairly traceable to the challenged action of the County; and (3) it is likely, as

8   opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Lujan v.*

9   *Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Moreover, where a plaintiff's alleged injury is

10   based on the defendant's regulation of a third party, as the Government alleges here, "causation

11   [traceability] and redressability ordinarily hinge on the response of the regulated . . . third party to

12   the government action or inaction—and perhaps on the response of others as well."  *Lujan*, 504

13   U.S. at 562.  In such a case, the Court recognized:

14
> The existence of one or more of the essential elements of standing "depends on
> the unfettered choices made by independent actors not before the courts and

15
> whose exercise of broad and legitimate discretion the courts cannot presume

16
> either to control or to predict," and it becomes the burden of the plaintiff to
> adduce facts showing that those choices have been or will be made in such

17
> manner as to produce causation and permit redressability of injury.

18   *Id.* (citations omitted).  "The party invoking federal jurisdiction bears the burden of establishing

19   these elements . . . with the manner and degree of evidence required at the successive stages of the

20   litigation."  *Id.* at 561.

21        The Government relies on *United States v. City of Arcata*, 629 F.3d 986 (2010), to argue it

22   has standing.  But *City of Arcata* involved a municipal ordinance that specifically precluded

23   federal government employees from recruiting for the military, and which the City intended to

24   immediately enforce against the government.  *Id.* at 988.  Crucially, the City did not contest

25   causation, did not contest redressability, and conceded in its answer imminent adverse impact.  *Id.*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 6
(Case No. 2:20-cv-203 RJB)

at 989-90.  *I.e.*, despite *pleading* a lack of standing, the City did not contest the allegations that *established* standing.  *Id.*

In sharp contrast here, the County contests every element of standing.  The Government has not pleaded, let alone established, that it suffered an injury traceable to the County that could be redressed by a decision in this case.  Nor should the Government be allowed to backfill its standing argument on reply because the Court need not consider arguments raised for the first time in a reply brief.  *See Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003).

1.     **The Pleadings Do Not Establish That the Government Has Suffered a Concrete Injury.**

To satisfy the requirement that there be an injury in fact, the plaintiff must establish an invasion of a legally-protected interest that is "concrete and particularized, and . . . actual or imminent, not 'conjectural' or 'hypothetical.'"  *Lujan*, 504 U.S. at 560 (citations omitted).  The County denied that "the Airport EO has had a significant impact on ICE's operations in the Northwest United States."  Dkt. 13, p. 5, ¶ 30.  The Airport EO is clear that it applies only to "future leases," and even in the future it exempts federal aircraft from its scope.  Dkt. 1-1, p. 3. Moreover, the Government did not allege that any FBO breached a contract with the Government or that the FBOs were otherwise required to perform services for the Government, so it is not established that the FBOs' alleged decisions to not service flights chartered indirectly by the Government has caused it any injury.  Nor can the Government establish an injury based on the Airport EO's directive that the County require that its tenants strictly comply with existing law. The Government has not challenged any such existing laws as violative of federal law or articulated how requiring compliance has injured the Government.

The pleadings do not establish that the Government has suffered an injury in fact.  The Government's motion should be denied for this reason alone.

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

**2.      The Pleadings Do Not Establish That the Government's Alleged Injury Is Traceable to the County.**

The County denies that the Government's alleged harm is traceable to actions by the County.  *E.g.*, Dkt. 13, p. 2, ¶ 6.  As the Court recognized in *Lujan*, given the involvement of the third party FBOs (and others such as the Government's contractors), discovery is necessary to determine whether the Government's alleged injury is traceable to the adoption of the Airport EO or an independent decision by the FBOs to not service the flights.  504 U.S. at 562.  Until that factual issue is resolved, the Government is not entitled to judgment on the merits.[2]

**3.      The Pleadings Do Not Establish That the Government's Alleged Injury Would Be Redressed by a Favorable Ruling in This Case.**

A plaintiff cannot satisfy the redressability element if it will suffer the claimed injury even if a court rules in its favor.  *Lujan*, 504 U.S. at 562.  Where the plaintiff's alleged injury is caused by a third party, the plaintiff must establish that its requested relief will cause the third party to alter its conduct in a way that redresses the injury.  *Id.*; *see also Ctr. for Biological Diversity v. Export-Import Bank of the United States*, 894 F.3d 1005, 1013 (9th Cir. 2018).

To satisfy this element, the Government will need to prove that invalidation of the Airport EO would result in an FBO at Boeing Field independently deciding to start servicing the Government-chartered flights.  The Government has not done so on the pleadings (*see, e.g.*, Dkt. 13, p. 2, ¶ 6) and likely cannot do so once evidence is adduced.

---

[2] The Court should deny the Government's request that the Court take judicial notice of two King County press releases and an ICE Fact Sheet because the Government seeks thereby to establish the truth of the statements contained in them.  *See* Motion, p. 2 n.1, 4, 9.  The Court cannot do that on a Rule 12(c) motion, especially where the County has denied the truth of their contents.  *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1029-30 (N.D. Cal. 2015); Dkt. 13, p. 4-5, ¶¶ 20, 29.

But these extrinsic materials actually evidence that the Government's alleged injury is *not* traceable to the County, reflecting that the FBOs decided (*i.e.*, were not forced by the County) not to service immigration flights.  *E.g.*, May 2 press release ("Modern Aviation conveyed . . . that it would no longer service Swift Air Flights that carry immigration detainees" and that "FBO[s] Kenmore Aero Services and Signature Flight Support have communicated to airport officials that they will not contract with Swift Air for Immigration flights.")

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 8
(Case No. 2:20-cv-203 RJB)

1      Because the County asserted the Government's lack of standing as an affirmative defense,

2  and because the pleadings do not establish that the Government has standing, the Government is

3  not entitled to judgment on the pleadings.

4  **C.    The Pleadings Do Not Establish That the Government's Claims Are Ripe.**

5      The County asserted as an affirmative defense that the Government's claims are not ripe

6  (Dkt. 13, p. 2, ¶ 4), and thus the Government has "[t]he burden of establishing ripeness." *Colwell*

7  *v. Dep't of Health and Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009).  As with standing, the

8  Government is not entitled to judgment on the merits because the pleadings do not establish that its

9  claim is ripe.

10     The ripeness inquiry has both a constitutional and a prudential component, and is designed

11 to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in

12 abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).  "The constitutional

13 component of ripeness overlaps with the 'injury in fact' analysis for Article III standing." *Union*

14 *Pac. R.R. Co. v. Sacks*, 309 F. Supp. 3d 908, 918 (W.D. Wash. 2008) (citation omitted).  A case is

15 only ripe where the plaintiff faces "a realistic danger of sustaining a direct injury as a result of the

16 statute's operation or enforcement," as opposed to fears that are too "imaginary" or "speculative"

17 to support jurisdiction. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1140 (9th

18 Cir. 2000) (citation omitted).

19

20     The prudential ripeness inquiry asks "(1) whether the issues are fit for judicial decision, and

21 (2) whether the parties will suffer hardship if [the court] decline[s] to consider the issues." *City of*

22 *Auburn v. Qwest Corp*, 260 F.3d 1160, 1171 (9th Cir. 2001), overruled on other grounds by *Sprint*

23 *Telephony PCS, L.P. v. County of San Diego*, 543 F.3d 571, 576 (9th Cir. 2008).  The pleadings do

24 not establish these necessary elements.

25

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 9
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1.      **The Pleadings Do Not Establish a Case or Controversy.**

The pleadings do not establish that the threat of enforcement is "credible" at this point. The County denies that the Airport EO currently prohibits FBOs from providing services to Government or Government-chartered aircraft (Dkt. 13, p. 2, ¶ 6), which is corroborated by the text of the Airport EO (Dkt. 1-1, p. 3).  Nor is there any allegation (uncontested or otherwise) showing when the FBOs' current leases will expire, whether they will seek new leases with the County, and whether the Government or its contractors[3] will wish to conduct flights from Boeing Field when that time comes.  The pleadings do not establish that the Government's claims are ripe.

2.      **The Pleadings Do Not Establish Prudential Ripeness.**

"A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final."  *Union Pac.*, 309 F. Supp. 3d at 921 (citation omitted).  The hardship element requires that a litigant "show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *Id.* (citation omitted).  The pleadings do not establish either element.

The Government does not allege (nor could it) that any of the Airport EO directives have been implemented by the County.  The Government does not allege (nor could it) that new leases have been negotiated, compliance procedures have been developed, or amendments have been made to the airport's rules and regulations or King County Code Title 15.  *See* Dkt. 1-1, pp. 3-4. Until and unless the County takes these steps, the Government's claims are not fit for decision.

The pleadings also do not establish that withholding review at this point would result in direct and immediate hardship.  There is no evidence that the Boeing Field FBOs are even

---

[3] The Government does not allege whether it or a third-party contractor determines the airports from which to conduct immigration flights.  This presents an additional standing and ripeness question that can only be answered after discovery.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 10
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

interested in servicing these flights.  Until the Government proffers evidence otherwise, any alleged "hardship" caused by the Airport EO is purely hypothetical.

**D.     The County Operates the Airport as a Market Participant, Taking it Outside the Scope of Federal Preemption and the Intergovernmental Immunity Doctrine.**

The County asserted as an affirmative defense that it is acting as a market participant and thus its actions are not subject to challenge under preemption or the intergovernmental immunity doctrine.  Dkt. 13, p. 7, ¶ 5.  The Court cannot resolve the Government's claims on the merits until it resolves this affirmative defense, which necessarily involves development of the factual record.

Governments have different roles in different contexts, and actions taken in those various roles have fundamentally different legal consequences.  *See, e.g., Reeves, Inc. v. Stake*, 447 U.S. 429, 436-37 (1980) ("The basic distinction drawn . . . between States as market participants and States as market regulators makes good sense and sound law.").  "The market participant doctrine distinguishes between a state's role as a regulator, on the one hand, and its role as a market participant, on the other."  *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1040 (9th Cir. 2007).

Both federal preemption and the intergovernmental immunity doctrine arise from the Supremacy Clause, and both prohibit certain forms of regulation.  *Id.* at 1040-41; *North Dakota v. United States*, 495 U.S. 423, 436 (1990).  The intergovernmental immunity doctrine also prohibits, under certain circumstances, states from discriminating against the federal government or those with whom it deals.  *North Dakota*, 495 U.S. at 436.  In this way, the intergovernmental immunity doctrine is "conceptually similar" to the dormant commerce clause, which prohibits discrimination against interstate commerce.  *W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 200 n.17 (1994).

Actions taken by states or municipalities as market participants generally are exempt from federal regulation under the Supremacy or Commerce Clauses.  For example, in *Engine*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 11
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*Manufacturers*, the Ninth Circuit recognized that the market participant doctrine exempts otherwise invalid state regulations from preemption where the government implemented them as a market participant.  498 F.3d at 1040-41.  Similarly, state actions that otherwise would be invalid under the Constitution as discriminatory are permissible where the state is acting as a market participant.  *Reeves*, 447 U.S. at 438-39 (South Dakota, as the seller of cement, was permitted to favor sales to in-state users, despite the Commerce Clause's prohibition against discrimination against interstate commerce, where it was acting as a market participant).  Here, because the County is acting as a market participant in managing the airport, its actions are exempt from both federal preemption and intergovernmental immunity.

The Ninth Circuit's holding in *Airline Serv. Providers Assoc. v. Los Angeles World Airports*, 873 F.3d 1074 (9th Cir. 2017) (*LAWA*), is instructive.  In *LAWA*, a trade association brought suit against LAWA, arguing that federal labor laws preempted a labor peace agreement obligation the city sought to impose on its FBO tenants at LAX.  The Court held that where a local government "manages property as a private party would, it acts as a 'market participant,' not as a regulator, and we presume that its actions are not subject to preemption."  *Id.* at 1079.  The court then explained:

> [A]irports are commercial establishments . . . [that] must provide services attractive to the marketplace.  If the City operates the airport poorly, fewer passengers will choose to fly into and out of LAX, fewer airlines will operate from LAX, and the City's business will suffer.  It must avoid commercial pitfalls as the proprietor of a commercial enterprise.

*Id.* at 1081 (citation omitted).

Similar considerations informed the County's decision to adopt the Airport EO.  The County's concerns about safety, security, its public image, and retaining customers were among the elements that led the County to adopt the Airport EO:

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 12
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700    FAX (206) 623-8717

**WHEREAS**, the use of King County International Airport in this manner is inconsistent with the County's obligation to operate the airport in a safe and efficient manner for all persons, not just citizens, and further use of King County International Airport in this manner would be detrimental to the public welfare and could adversely affect the willingness or ability of other persons to use, or engage in businesses at, King County International Airport with a negative effect on the financial sustainability of King County International Airport.

Dkt. 1-1, pp. 2-3.  Given the controversial nature of the Government's operations, Boeing Field's traditional customer base, and the availability of alternative regional and municipal airports in the Puget Sound region with which Boeing Field competes for business, the County believes that the evidence will demonstrate that its interest as a market participant is even stronger than Los Angeles' was in operating LAX and that the Airport EO was narrowly tailored to address these concerns.  *LAWA*, 873 F.3d at 1081-83.

*LAWA* also makes clear that a municipality can have both a proprietary and a political motive and still come within the market participant exception, confirming that a "state or local government may entertain non-economic purposes and yet rely on the market participant doctrine." *Id.* at 1084.  "[L]urking political motives are an inevitable part of a public body's actions and are not 'a reason for invalidity.'"  *Id.* (citation omitted).  That the County had multiple reasons for adopting the Airport EO is not relevant where it was acting as a market participant.  The Government's motion for judgment on the pleadings cannot overcome this affirmative defense.

**E.     The Pleadings Do Not Establish That the Airport EO Is Preempted.**

Even if the County were not acting as a market participant, judgment on the pleadings still would not be appropriate because the Government has not established that the Airport EO should be preempted.

"Obstacle preemption exists where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Washington v. GEO Grp., Inc.*,

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 13
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

283 F. Supp. 3d 967, 977-78 (W.D. Wash. 2017) (citation omitted). "[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Thus, "a court should not find preemption too readily in the absence of clear evidence of a conflict." *Geier v. Am. Honda Motor Co., Inc.,* 529 U.S. 861, 885 (2000).  Laws enacted pursuant to a state or local government's historic police powers should be presumed valid "unless [preemption] was the clear and manifest purpose of Congress." *Arizona v. United States*, 567 U.S. 387, 400 (2012) (citation omitted).

The Government argues that the Airport EO creates an obstacle to the "Government's authority to remove individuals from the United States." Motion at 10.  In support of this conclusory argument, the Government's motion references five statutory sections that it claims, without any analysis, are obstructed by the Airport EO.  *Id.*  But none of the cited sections mandate the manner in which immigrants are transported around the country.  Nor do they dictate the use of any particular municipality-owned airport to transport detainees.  To the contrary, a decision that federal law preempts municipal airport operators' decisions about the types of flights their airports can safely and appropriately facilitate would place municipal airport operators at the mercy of federal contractors and third parties who might ignore those well-founded concerns based on convenience or cost, creating liability and risk for the municipality.  This would be an untenable result.

As in *United States v. California* (*California I*), 314 F. Supp. 3d 1077 (E.D. Cal. 2018), *aff'd in part & rev'd in part*, *United States v. California* (*California II*) 921 F.3d 865 (9th Cir. 2019), nothing in the Airport EO "purport[s] to give [a local government] a role in determining whether an immigrant should be detained or removed from the country." *Id.* at 1091.  Instead, the

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 14
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

County seeks only to manage the safe and efficient use of its airport facilities, a power that is clearly within its traditionally recognized powers. *See, e.g.*, Wash. Const. art. XI, § 11 (granting counties the power to "make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws"); chapter 14.08 RCW (granting municipalities operating airports broad powers, including jurisdiction and control over airport operations, the authority to enact "needed rules, regulations, and ordinances," and to determine terms and conditions for tenants' use of airport property).

The Government seeks to circumvent the Court's consideration of the facts by arguing that preemption is a matter of law. Motion at 10. But that does not mean the question can be adjudicated on the bare record here, where facts critical to any obstacle preemption analysis are yet to be discovered. As this Court recently recognized in another immigration case:

> Defendant's obstacle preemption argument is also premature, because addressing whether the federal objectives and purposes will be obstructed would require resolution of factual determinations far beyond the pleadings. [¶] In sum, the conflict/obstacle preemption issues may become ripe at summary judgment or at trial, but at present factual issues abound that preclude a decision based on the pleadings, and before discovery.

*Geo Grp., Inc.*, 283 F. Supp. 3d at 978. The same is true here.

The County has denied all of the Government's allegations that the Government has been obstructed or impacted by the Airport EO. Dkt. 13, pp. 5-6, ¶¶ 31-37, 40-41. Those allegations are therefore false for purposes of this motion. *Hal Roach*, 896 F.2d at 1550. At a minimum, fact issues exist over whether the Airport EO presents a significant obstacle to the Government's deportation activities. *See Goldstein v. California*, 412 U.S. 546, 554-55 (1973) ("mere possibility of inconvenience" is not a sufficient obstacle); *Kelly v. Washington ex rel. Foss Co.*, 302 U.S. 1, 10 (1937) ("repugnance or conflict" must be "so 'direct and positive' that the two acts cannot 'be

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 15
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

reconciled or consistently stand together'" (citation omitted)).  Given the strong presumption

against finding obstacle preemption, judgment may not be had on the pleadings.

**F.      The Pleadings Do Not Establish That the Intergovernmental Immunity Doctrine Bars the Airport EO.**

As noted above, "the doctrine of governmental immunity is rooted in the Supremacy

Clause, which guarantees that 'the activities of the Federal Government [be] free from regulation

by any state.'"  *Washington v. GEO Group, Inc.*, No. 17-cv-5806, 2018 WL 6448778, at *3 (W.D.

Wash. Dec. 10, 2018) (citation omitted).  "Courts take 'a functional approach to claims of

governmental immunity, accommodating []the full range of each sovereign's legislative

authority.'"  *Id.* (citation omitted) State laws may be unconstitutional if (1) they "regulate the

United States directly," or (2) they "discriminate against the Federal Government or those with

whom it deals."  *Id.* (citation omitted).  The Airport EO does neither.

**1.      The Airport EO Does Not Directly Regulate the Government.**

The Government is incorrect that the "direct regulation" prong does not require direct

regulation of the federal government, and instead can be implicated where the state regulates those

who choose to deal with the government.  Motion at 8.  Decisional law is clear that the direct

regulation prong invalidates only those laws that "regulate[] the Federal Government directly."

*North Dakota*, 495 U.S. at 436.  In *North Dakota*, the Court considered whether a North Dakota

liquor labeling law violated the intergovernmental immunity doctrine where it required out-of-state

suppliers put labels on their bottles indicating they were for consumption on federal military bases

only, causing some out-of-state suppliers to stop doing business with, or raise the cost to, the

federal government.  *Id.*  Under the "direct regulation" prong, the Court recognized, "[b]oth the

reporting requirement and the labeling regulation operate against suppliers, not the Government,

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 16
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

and concerns about direct interference with the Federal Government . . . therefore are not implicated." *Id.* at 437.

The cases the Government cites are in accord with *North Dakota*. *Boeing v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014), involved a special environmental clean-up standard California enacted for application at a single contaminated site. The Ninth Circuit found that California directly regulated the federal government because the Department of Energy was the "responsible party" at the site. *Id.* at 839. Boeing was the contractor DOE hired to do the clean-up. *Id.* Similarly, in the excerpt the Government cites from *California II*, 921 F.3d 865, the Ninth Circuit was distinguishing *Boeing* and *City of Arcata*, which involved direct federal government regulation, from cases where the law in question did not regulate the federal government. *Id.* at 880. And the Government's citation to *California I* is misplaced because the quoted language concerned the non-discrimination prong, not the direct regulation prong. 314 F. Supp. 3d at 1096.

Here, the County denies that it is directly regulating the federal government, a fact manifest in the Airport EO. Dkt. 13, p. 6, ¶¶ 36-37; Dkt. 1-1. Nor is the County regulating any of the Government's agents or contractors. By its terms, the Airport EO is limited to managing the County's relationships with its tenants at an airport the County owns and operates, and the federal government is expressly exempted from the scope of the Airport EO. Dkt. 1-1, p. 3, ¶ 3. Concerns about direct regulation "therefore are not implicated." *North Dakota*, 495 U.S. at 437.

### 2. The Airport EO Does Not Discriminate Against the Government.

"The nondiscrimination rule finds its reason in the principle that the States may not directly obstruct the activities of the Federal Government." *GEO Grp., Inc.*, 2018 WL 6448778, at *3 (citing *North Dakota*, 495 U.S. at 437-38). A state "does not discriminate against the Federal

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 17
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

Government and those with whom it deals unless it treats someone else better than it treats them." *California II*, 921 F.3d at 881 (citing *Washington v. United States*, 460 U.S. 536, 544-45 (1983)).

It is well settled that a challenged law that treats the government worse than someone else will *not* be struck down if significant differences exist between the government and third parties that justify the different treatment. *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 815-17 (1989). "The relevant inquiry is whether the inconsistent . . . treatment is directly related to, and justified by, 'significant differences between the two classes.'" *Id.* at 816 (citation omitted).

Here, it is unclear even whom the Government contends the County is discriminating against. In its complaint, the Government identifies unspecified "private parties" as those discriminated against (Dkt. 1, p. 7, ¶ 36) and the County denied that allegation (Dkt. 13, p. 6, ¶ 36). In its motion, the Government appears to allege the County is discriminating between its FBO tenants. Motion at 9. But the County denies discrimination or differential treatment. Dkt. 13, p. 6, ¶ 36. Moreover, there is no allegation or evidence that these FBOs even have relationships with the Government, contractual or otherwise. Nor is there any allegation that the FBOs' existing contracts with the County, which are not affected by the Airport EO, have expired or are set to expire, such that any discrimination would even be possible. If and when any such lease negotiations occurred, the proper party (if any) to bring such a claim would be the affected FBOs, if those FBOs believe they are affected by the Airport EO. The Government's argument simply illuminates that it lacks standing to pursue its unripe claims.

Even assuming the Government had established that the County is treating those involved in immigration flights differently than those not involved, the Government's motion nonetheless should be denied because there are significant differences between immigration flights and other flights at Boeing Field. The County will prove those differences after discovery, and they likely

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 18
(Case No. 2:20-cv-203 RJB)

1    will include commercial impacts to the County, safety and security obligations, the likelihood of

2    community protests or other disruptions at the airport, and negative publicity for the County (and

3    its tenants) resulting from the use of the airport for these particular flights.

4         Further, the law is clear that "[a]nalysis of an allegedly discriminatory ordinance 'must

5    proceed from the text of the ordinance, not the alleged motives behind it.'"  *GEO Grp., Inc. v. City*

6    *of Tacoma*, No. 18-cv-5233, 2019 WL 5963112, at *4 (Nov. 13, 2019) (citation omitted).

7    "[P]olitically-motivated statements" that might betray a "nefarious motive" behind the challenged

8    law are "irrelevant."  *Id.* at *6 n.2.  Thus, while the Government points to statements allegedly

9    made by the County or that appear in the non-operative portions of the Airport EO which it

10   contends prove the County's intent to discriminate against the Government, none of those bear on

11   whether the ordinance actually discriminates against the Government.

12        The Government is not entitled to judgment on the pleadings in the face of the County's

13   denials and defense.

14

15   **G.    The Pleadings Do Not Establish That the Government Is Entitled to Judgment in
         Light of the County's Tenth Amendment Affirmative Defense.**

16

17        The County asserted as an affirmative defense that the Government's claims violate the

18   Tenth Amendment and its anti-commandeering principles.  Dkt. 13, p. 7, ¶ 2.

19        In *California II*, the Ninth Circuit reiterated that states have the right under the Tenth

20   Amendment to refrain from assisting the federal government's deportation program.  921 F.3d at

21   888.  As the Court recognized, "under the Tenth Amendment and other provisions of the

22   Constitution, 'the Federal Government may not compel the States to implement, by legislation or

23   executive action, federal regulatory programs.'"  *Id.* (citation omitted).  The Immigration and

24   Naturalization Act "does not require any particular action on the part of" a state or its

25   municipalities.  *Id.* at 889.  Instead, "federal law provides states and localities the *option*, not the

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 19
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*requirement*, of assisting federal immigration authorities." *Id.* (emphasis in original).  Relatedly, the Tenth Amendment's anti-commandeering provision is another defense to the Government's preemption and intergovernmental immunity claims.  As the court recognized in *California II*, potential frustration caused by the California statute "is permissible, because California has the right, pursuant to the anticommandeering rule, to refrain from assisting with federal efforts." *Id.* at 891.

The Government challenges the Airport EO's directive to "[t]ake appropriate actions, consistent with the County's federal obligations, to minimize County cooperation with, facilitation of, and permission for, operations associated with transportation of immigration detainees." Motion at 4 (citing Dkt. 1-1, p. 3, ¶ 1).  But this directive simply asserts the County's intention, pursuant to its rights under the Tenth Amendment, to limit assistance to federal immigration authorities.

The Tenth Amendment also protects the County from the Government's attempts to usurp its statutory authority under RCW 14.08.120 to determine the terms upon which the County, as the operator of Boeing Field, rents airport property.  The County's authority to negotiate the terms and conditions of those leases is broad and the County is granted wide discretion in exercising that authority. *See Hite v. Pub. Util. Dist. No. 2*, 112 Wn.2d 456, 460, 772 P.2d 481 (1989).  Just as the federal government cannot require that a municipality use its facilities to detain immigrants, *see Galarza v. Szalczyk*, 745 F.3d 634, 643 (3d Cir. 2014), it likewise cannot force the County to allow the use of its airport to further any particular Government regulatory program.  Both actions attempt to commandeer municipalities into using their resources to administer and enforce federal immigration programs, in violation of the Tenth Amendment.  The same is true with the remaining Airport EO directives challenged by the Government.  Motion at 4.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 20
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1

## IV.    CONCLUSION

2

For the above-stated reasons, the Court should deny the Government's motion.

3

DATED this 4th day of May, 2020.

4

HARRIGAN LEYH FARMER & THOMSEN LLP

5

By: _s/ Timothy G. Leyh_
By: _s/ Kristin E. Ballinger_
6
By: _s/ Shane P. Cramer_
7
Timothy G. Leyh, WSBA #14853
Kristin E. Ballinger, WSBA #28253
8
Shane P. Cramer, WSBA #35099
999 Third Avenue, Suite 4400
9
Seattle, WA 98104
Tel:  (206) 623-1700
10
Email: timl@harriganleyh.com
Email: kristinb@harriganleyh.com
11
Email: shanec@harriganleyh.com

DANIEL T. SATTERBERG
12
King County Prosecuting Attorney

13

By: _s/ Timothy P. Barnes_
14
By: _s/ H. Kevin Wright_
15
Timothy P. Barnes, WSBA #29929
H. Kevin Wright, WSBA #19121
16
Senior Deputy Prosecuting Attorneys
516 Third Avenue, Suite W400
17
Seattle, WA 98104
Tel:  (206) 477-1120
18
Fax:  (206) 296-0191
Email: timothy.barnes@kingcounty.gov
19
Email: kevin.wright@kingcounty.gov

20
_Attorneys for King County and Dow Constantine_

21

22

23

24

25

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS- 21
(Case No. 2:20-cv-203 RJB)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700    FAX (206) 623-8717