1

2

3

4

5

6

7

The Honorable Robert J. Bryan

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8

UNITED STATES OF AMERICA,

9

Plaintiff,

10

v.

11

KING COUNTY, WASHINGTON; DOW
CONSTANTINE, in his official capacity as
King County Executive

12

13

Defendants.

14

No. 2:20-cv-203

**PLAINTIFF'S REPLY IN SUPPORT**
**OF ITS MOTION FOR JUDGMENT**
**ON THE PLEADINGS**

NOTE ON MOTION CALENDAR:
May 8, 2020

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................... 1

I.      THE GOVERNMENT'S RULE 12(C) MOTION IS PROCEDURALLY PROPER ...... 1

II.     THE GOVERNMENT HAS STANDING ........................................................................ 2

III.    THIS CASE IS RIPE FOR REVIEW ............................................................................... 4

IV.     THE EXECUTIVE ORDER VIOLATES INTERGOVERNMENTAL IMMUNITY ..... 5

        A.    The Executive Order Discriminates Against the Federal Government and Those
              With Whom it Deals ............................................................................................. 5

        B.    The Executive Order Directly Regulates the Federal Government .......................... 7

V.      THE EXECUTIVE ORDER IS OBSTACLE PREEMPTED ........................................... 8

VI.     THE COUNTY'S "MARKET PARTICIPANT" DEFENSE IS MERITLESS ............... 9

VII.    THE COUNTY'S "COMMANDEERING" DEFENSE IS MERITLESS .................... 11

CONCLUSION ................................................................................................................. 12

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - i
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Airline Serv. Providers Ass'n v. L.A. World Airports*,
    873 F.3d 1074 (9th Cir. 2017) ................................................................... 10, 11

4

5

*Arizona v. United States*,
    567 U.S. 387 (2012) ...................................................................................... 8

6

*Barnum Timber Co. v. U.S. EPA*,
    633 F.3d 894 (9th Cir. 2011) ........................................................................ 2

7

8

*Boeing Co. v. Movassaghi*,
    768 F.3d 832 (9th Cir. 2014) ............................................................ 6, 7, 8, 11

9

*Davis v. Michigan Dep't of Treasury*,
    489 U.S. 803 (1989) ...................................................................................... 7

10

11

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
    498 F.3d 1031 (9th Cir. 2007) ................................................................... 9, 10

12

*First Nat'l Bank of Boston v. Bellotti*,
    435 U.S. 765 (1978) ..................................................................................... 11

13

14

*Gerritsen v. Warner Bros. Entm't Inc.*,
    112 F. Supp. 3d 1011 (N.D. Cal. 2015) ......................................................... 3

15

16

*In re NSA Telecoms. Records Litig.*,
    633 F. Supp. 2d 892 (N.D. Cal. 2007) .......................................................... 4

17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ...................................................................................... 5

18

19

*LifeScan Scot., Ltd. v. Shasta Techs., LLC*,
    2012 WL 2979082 (N.D. Cal. July 19, 2012) ................................................ 3

20

*McCulloch v. Maryland*,
    17 U.S. (4 Wheat.) 316, 436 (1819) ............................................................ 10

21

22

*Mobil Oil Corp. v. Virginia*,
    940 F.2d 73 (4th Cir.1991) ............................................................................ 4

23

*Murphy v. National Collegiate Athletic Ass'n*,
    138 S. Ct. 1461 (2018) .............................................................................. 11, 12

24

25

*N. Ill. Ch. Of Assoc. Builders & Contractors, Inc. v. Lavin*,
    431 F.3d 1004 (7th Cir. 2005) ..................................................................... 10

26

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - ii
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
    508 U.S. 656 (1993) ................................................................................ 4

*New York v. United States*,
    505 U.S. 144 (1992) ............................................................................... 11

*North Dakota v. United States*,
    495 U.S. 423 (1990) ................................................................................. 7

*Printz v. United States*,
    521 U.S. 898 (1997) ............................................................................... 11

*PUC of Cal. v. United States*,
    355 U.S. 534 (1958) ................................................................................. 2

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
    754 F.3d 754 (9th Cir. 2014) .................................................................. 8

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013) ................................................................................... 5

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) ................................................................ 5

*United States v. California*,
    314 F. Supp. 3d 1077 (E.D. Cal. 2018),
    *aff'd in part & rev'd in part*, 921 F.3d 865 (9th Cir. 2019),
    *petition for cert. filed*, 2019 WL 5448580 (U.S. Oct. 23, 2019) (No. 19-532) ......... 6, 11, 12

*United States v. City of Arcata*,
    2009 WL 1774269 (N.D. Cal. June 18, 2009),
    *aff'd*, 629 F.3d 986 (9th Cir. 2010) ........................................... *passim*

*United States v. JP Morgan Chase Bank Account*,
    835 F.3d 1159 (9th Cir. 2016) ................................................................ 5

*Washington v. Geo Grp., Inc.*,
    283 F. Supp. 3d 967 (W.D. Wash. 2017) ............................................... 9

*W. Lynn Creamery, Inc. v. Healy*,
    512 U.S. 186 (1994) ................................................................................. 9

*Wisc. Dep't of Industry, Labor & Human Relations v. Gould Inc.*
    475 U.S. 282 (1986) ............................................................................... 11

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) ............................................................ 4, 5

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS   - iii
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1

## OTHER AUTHORITIES

2    8 U.S.C. § 1231 ................................................................................. 8

3    Fed. R. Evid. 801 ............................................................................. 3

     Fed. R. Civ. P. 12(c) ......................................................................... 1

4    U.S. Const. art. I, sec. 8, cl. 3 .......................................................... 9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - iv
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1   Executive Order PFC-7-1-EO explicitly discriminates against those who choose to deal

2   with immigration officials; directly regulates the Government's conduct related to removal

3   proceedings; and creates an unconstitutional obstacle to enforcement of the immigration laws

4   repugnant to congressional intent.  Defendants King County and King County Executive Dow

5   Constantine ("the County") stoutly deny many of the allegations in the Government's complaint

6   and insist instead that there are factual questions that must be answered before proceeding to

7   judgment, but they cannot deny what is principally at issue in this case: the text of the Executive

8   Order.  The County's intent to enforce the Executive Order gives rise to the Government's

9   standing to challenge the Executive Order, and no set of facts would allow the Executive Order

10   to survive the Government's facial challenge to its constitutionality.  Accordingly, the Court

11   should grant the Government's motion for judgment on the pleadings and enjoin enforcement of

12   the Executive Order in its entirety.

13   <center>**ARGUMENT**</center>

14   **I.      THE GOVERNMENT'S RULE 12(C) MOTION IS PROCEDURALLY PROPER**

15   The County first attacks Rule 12(c) motions as "highly irregular," KC Opp'n 5, ECF No.

16   22, but does not give appropriate weight to the Ninth Circuit's affirmance of the grant of a Rule

17   12(c) motion under a closely analogous set of facts in *United States v. City of Arcata*, 2009 WL

18   1774269 (N.D. Cal. June 18, 2009), *aff'd*, 629 F.3d 986, 989 (9th Cir. 2010).  There, the district

19   court granted the Government's Rule 12(c) motion on its facial intergovernmental immunity and

20   preemption challenges to facially discriminatory municipal ordinances.  2009 WL 1774269, at

21   *2.  The Ninth Circuit affirmed on the basis of intergovernmental immunity.  629 F.3d at 990–

22   92.  Like the ordinances at issue in *City of Arcata*, the Executive Order explicitly seeks to ban

23   federal authorities from carrying out their mission by discriminating against private

24   contractors—Boeing Field lessees and air carriers—who work with immigration officials.

25   Compl., ECF No. 1, Ex. A, ¶¶ 1, 3–6.  Because fact development is not necessary to conclude

26   that such flagrant discrimination is unconstitutional, resolving the case through a Rule 12(c)

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - 1
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1 | motion is appropriate.

2 | **II.    THE GOVERNMENT HAS STANDING**

3 |      As in any case, the Government, as Plaintiff must show that the three elements of Article

4 | III standing—injury-in-fact, causation, and redressability—are satisfied.  *Barnum Timber Co. v.*

5 | *U.S. Envt'l Prot. Agency*, 633 F.3d 894, 897 (9th Cir. 2011).  Those elements are met here.

6 |      Starting with injury-in-fact, "intent to enforce" a local law gives rise to an injury

7 | "present and concrete" for standing purposes in a preemption or intergovernmental immunity

8 | challenge.  *PUC of Cal. v. United States*, 355 U.S. 534, 538–39 (1958); *United States v. City of*

9 | *Arcata*, 629 F.3d 986, 990 (9th Cir. 2010).  The defendants in *City of Arcata* did not "concede in

10 | [their] answer imminent adverse impact," as the County suggests.  KC Opp'n 6.  Rather, they

11 | *disputed* injury-in-fact, arguing, much as the County does, that the Government had asserted

12 | only a "hypothetical negative impact."  629 F.3d at 989.  But the Ninth Circuit held injury-in-

13 | fact was nonetheless established because the defendants intended to enforce the ordinances.  *Id.*

14 | at 989–90.  The same conclusion holds here.  The County insists that because it (allegedly) has

15 | *yet to enforce* the Executive Order, its lessees might have refused service to the Government for

16 | unspecified "business reasons" unrelated to the Executive Order.  *See* KC Opp'n 3–4.  But all

17 | Article III requires is an *intent* to enforce a local law.  Here, that intent is manifest from the

18 | Executive Order itself and the County's efforts to defend its legality.

19 |      Moreover, immigration authorities have *already* been harmed by these threats, as

20 | demonstrated by the County's acknowledging responsibility for the sudden refusal of fixed base

21 | operators ("FBOs") at Boeing Field to provide ground support to flights chartered by

22 | immigration authorities following the signing of the Executive Order.  King County, Press

23 | Release, "Operators at King County Airport Will Not Serve ICE Flights, Leaving No Ground

24 | Support for Immigration Transfers" (May 2, 2019), https://www.kingcounty.gov/elected/

25 | executive/constantine/news/release/2019/May/01-KCIA-lease.aspx (last accessed May 8, 2020).

26 | That alone is grounds to conclude the Government has suffered an injury-in-fact.  The County

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - 2
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1   denies that judicial notice can be taken over its own press releases, KC Opp'n 8 n.2, but these

2   statements from a party opponent, which appear on the County's website under Mr.

3   Constantine's name, are not hearsay and are admissible. Fed. R. Evid. 801(d)(2); *see LifeScan*

4   *Scotland, Ltd. v. Shasta Techs., LLC*, 2012 WL 2979082, at *6 n.1 (N.D. Cal. July 19, 2012)

5   (rejecting defendant's argument that judicial notice could not be taken of its own press releases

6   for truth of matters asserted in them). *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d

7   1011 (C.D. Cal. 2015), on which the County relies, criticized taking judicial notice of (1) third

8   party press releases and articles and (2) unspecified "information" on the website of a non-

9   governmental defendant. *Id.* at 1027–31. But even *Gerritsen* recognized judicial notice is

10  appropriate when a website belongs to "a governmental body" that is "maintained not to further

11  the business interests of the party but to provide a source of public information." *Id.* at 1030–31

12  (quoting *Koenig v. USA Hockey, Inc.*, 2010 WL 4783042, at *2 (S.D. Ohio June 14, 2010)).

13          The County argues that the Government has not alleged a "concrete injury" because the

14  Executive Order "applies only to 'future leases,'" and the Government has not explained what

15  actions the County has taken against current lessees. KC Opp'n 7. That is irrelevant; threatened

16  future injury is sufficient for standing purposes, and not "hypothetical." *City of Arcata*, 629

17  F.3d at 990. The County also argues the Government has not alleged a contractual or other

18  formal legal duty under which "the FBOs were otherwise required to perform services for the

19  Government." KC Opp'n 7. But the Executive Order prohibits *any* relationship, formal or

20  informal, direct or indirect, by which lessees "provid[e] . . . services" to contractors and sub-

21  contractors working with immigration authorities. Compl. Ex. A, ¶ 3. The threat to ban such

22  dealings gives rise to an injury-in-fact.

23          Causation and redressability are also straightforward. The Executive Order creates a

24  dilemma for the County's lessees and air carriers: they can either decline to work with

25  immigration officials, or the County will not renew their leases or operating permits, and take

26  actions under their current leases to "ensure strict . . . compliance" with the Executive Order.

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - 3
*United States v. King County, WA*, No. 2:20-cv-203.

U.S. DEPARTMENT OF JUSTICE
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

Compl. Ex. A, ¶¶ 3–5.  Creating this dilemma achieves the County's goal of excluding immigration authorities from the airport, as leases and operating permits are necessary prerequisites to doing business at Boeing Field.  Holding unconstitutional the Executive Order resolves the dilemma and removes the burden it imposes on immigration officials.

The County's argument that causation and redressability are not established because the Government has not shown that it would obtain ground support if the Executive Order were rescinded, KC Opp'n 8, misstates the law.  Contrary to the County's argument, "[w]hen [a local] government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) (summarizing cases on this point).  Article III does not require the Government to prove that lessees at the airport would immediately resume working with immigration officials if the Executive Order were struck down; the discriminatory burden the Executive Order places on the Government in its efforts to obtain such services suffices.  It follows that the Executive Order "is the 'cause' of [the Government's] injury and that a judicial decree" enjoining its enforcement "would 'redress' the injury." *Id.* at 666 n.5.

## III.    THIS CASE IS RIPE FOR REVIEW

"The constitutional component of ripeness overlaps with the 'injury in fact' analysis" because the two are "largely the same." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010).  The County asserts that this case is not ripe because there has been no "showing when the FBOs' current leases will expire, whether they will seek new leases with the County, and whether the Government or its contractors will wish to conduct flights from Boeing Field when that time comes." KC Opp'n 10.  But it is sufficient that the Executive Order "ma[kes] plain [the County's] intention to" ban immigration flights from the airport. *In re NSA. Telecoms. Records Litig.*, 633 F. Supp. 2d 892, 902 (N.D. Cal. 2007) (allowing pre-enforcement review of

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - 4
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

state regulations on preemption and intergovernmental immunity grounds); *see also City of Arcata*, 629 F.3d at 990; *Mobil Oil Corp. v. Att'y Gen. of Va.*, 940 F.2d 73, 76 (4th Cir. 1991) (allowing preenforcement review of amendments to state law that plaintiff argued was preempted because the state "Attorney General [had] not . . . disclaimed any intention of exercising her enforcement authority").

The County's argument about "prudential standing" argument also fails.  First, it completely ignores recent Supreme Court decisions "reaffirm[ing] . . .  the principle that 'a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–26 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)); *United States v. JP Morgan Chase Bank Account*, 835 F.3d 1159, 1167 (9th Cir. 2016).  Second, "[t]o the extent [prudential standing] continues to apply" post-*Lexmark*, it is plainly satisfied here.  *JP Morgan Chase*, 835 F.3d at 1167.  This case "is fit for decision, because it is primarily" about preemption and intergovernmental immunity and "substantial further factual development" is unnecessary to answer those legal questions.  *Wolfson*, 616 F.3d at 1060.  "[D]irect and immediate hardship" also exists because, "unless [the Government] prevail[s] in this litigation, [it] will suffer the very injury [it] assert[s]"—the inability to operate out of Boeing Field. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009).  Indeed, it is already suffering that injury.  The County's arguments simply reassert the same irrelevant arguments that infect its standing analysis.  KC Opp'n 10–11.  There is no sound reason why the Court should refrain from its "unflagging" obligation to decide this case on the merits. *Lexmark*, 572 U.S. at 126.

## IV.    THE EXECUTIVE ORDER VIOLATES INTERGOVERNMENTAL IMMUNITY

### A.    The Executive Order Discriminates Against the Federal Government and Those With Whom it Deals

The Executive Order "specifically target[s] and restrict[s] the conduct of" those who deal with immigration authorities.  *City of Arcata*, 629 F.3d at 991.  Like the ordinances at issue in *City of Arcata*, the Executive Order facially violates the non-discrimination prong of intergovernmental

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - 5
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

immunity, and no facts that Defendants could develop would alter that conclusion.

As a threshold matter, the County asserts that it is "unclear even whom the Government contends the County is discriminating against," KC Opp'n 18, but that question is answered by the Executive Order: it targets entities that contract with the Government and those with whom it deals to assist with transport flights for detained aliens, with the purpose of banning those flights from Boeing Field. Compl., Ex. A ¶¶ 3–4. It also imposes discriminatory permitting procedures on carriers contracted by the Government. *Id.* ¶ 5. The relevance of understanding the details of the "relationship" between these entities is never explained by the County. It is also irrelevant. *United States v. California*, 314 F. Supp. 3d 1077, 1096 (E.D. Cal. 2018) (rejecting argument that intergovernmental immunity is limited to "laws that imposed burdens on entities contracting with, or supplying something to, the Federal Government, thus 'dealing' with the United States in an economic sense"), *aff'd in part & rev'd in part on other grounds*, 921 F.3d 865, 880 (9th Cir. 2019) (laws that "directly or indirectly affect[] the operation of a federal program or contract" violate intergovernmental immunity), *petition for cert. filed*, 2019 WL 5448580 (U.S. Oct. 23, 2019) (No. 19-532). The County here simply falls back on its standing and ripeness arguments, KC Opp'n 18, which fail for reasons already explained. The Court need not wait until the County says it has acted on its intentions to declare the Executive Order unconstitutional.

The County also claims there are "significant differences between immigration flights and other flights at Boeing Field" that justify its discriminatory treatment of immigration flights. KC Opp'n 18–19. Even if such differences were found to exist, they would be irrelevant under Ninth Circuit precedent because the differential treatment at issue here does not arise from the County's generally applicable regulations of Boeing Field. In *Boeing Co v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014), the State of California passed a statute, SB 990, that targeted a federal research site "for a substantially more stringent cleanup scheme than that which applies elsewhere in the State." 768 F.3d at 842–43. The Ninth Circuit held that "[t]he fact that [the

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - 6
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1   research site] is especially contaminated does not render the law non-discriminatory because

2   California's generally-applicable environmental laws do not impose the SB 990 radioactive

3   cleanup standards." *Id.*  Unlike *Davis v. Michigan Department of Treasury*, 489 U.S. 803

4   (1989), which dealt with Michigan's comprehensive tax rules for pension income, the

5   differential burdens of the Executive Order are not "incidental[]" to "a broad, neutrally

6   applicable rule."  *City of Arcata*, 629 F.3d at 991.  Rather, they are the stated purpose of the

7   Order.  No set of facts the County could prove would show otherwise.  Judgment on the

8   pleadings is therefore appropriate.

9       **B.    The Executive Order Directly Regulates the Federal Government**

10       The Executive Order runs afoul of the "direct regulation" prong of intergovernmental

11   immunity because it "do[es] not merely regulate the federal government incidentally; rather, [it

12   is] expressly intended to" ban immigration authorities from using Boeing Field. *City of Arcata*,

13   629 F.3d at 991.  It also unlawfully regulates air carriers retained by the Government by

14   requiring them to obtain "operating permits."  Compl. Ex. A ¶ 5.  Contrary to the County's

15   view, KC Opp'n 16, the regulation of the Government here is no less direct because it targets

16   these entities, rather than the Government itself, because it "mandates the ways in which"

17   Boeing Field lessees and government contractors "render[] services that the federal government

18   hire[s] [them] to perform."  *Movassaghi*, 768 F.3d at 840.

19       The County relies on *North Dakota v. United States*, 495 U.S. 423 (1990), but the

20   Executive Order is nothing like the state regulations upheld there.  North Dakota imposed

21   "reporting and labeling regulations" on out-of-state shipments of liquor bound for military bases

22   as part of its "comprehensive system for the distribution of liquor within its borders."  *Id.* at 432,

23   434 (describing this system).  "[C]oncerns about direct interference with the Federal

24   Government" were "not implicated" by these regulations. *Id.* at 437.  Contrary to the County's

25   claims, the Executive Order is not part of a comprehensive system of "managing the County's

26   relationships with its tenants at the airport." KC Opp'n 17.  Its explicit aim is to interfere with

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - 7
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1  enforcement of immigration law by deviating from the County's generally applicable regulatory

2  standards to prohibit immigration authorities from using the County's public airport.  Because

3  the Executive Order "overrides federal decisions as to" how removal should be conducted, it

4  violates intergovernmental immunity. *Movassaghi*, 768 F.3d at 840.

5  **V.    THE EXECUTIVE ORDER IS OBSTACLE PREEMPTED**

6         When it comes to immigration law, the "Government of the United States has broad,

7  undoubted power" under both the Constitution and "its inherent power as sovereign to control

8  and conduct relations with foreign nations."  *Arizona v. United States*, 567 U.S. 387, 394-95

9  (2012).  The Executive Order "violates the principle that the removal process is entrusted to the

10 discretion of the Federal Government"; in so doing, it "creates an obstacle to the full purposes

11 and objectives of Congress."  *Id.* at 407–10.  It is therefore unconstitutional under principles of

12 obstacle preemption.

13        The County contends that federal law does not "mandate the manner in which

14 immigrants are transported around the county," or "dictate the use of any particular

15 municipality-owned airport to transport detainees."  KC Opp'n 14.  But removal is necessarily

16 intertwined with air transportation.  Congress imposes statutory limitations on where aliens can

17 be removed, *see* 8 U.S.C. § 1231(b), and air transit is often *required* if, for instance, an alien

18 must be deported to a country that does not border the United States.  Federal law also gives

19 immigration authorities power to "arrange for appropriate places of detention for aliens detained

20 pending removal or a decision on removal," *id.* § 1231(g)(1), and those arrangements depend on

21 the Government's transportation options.  Local ordinances that deny the Government access to

22 the national airspace system on the same terms as the general public substitute the judgment of

23 localities as to how to arrange for detention and removal for that of the Government, contrary to

24 the Supreme Court's holding in *Arizona* that any such interference necessarily "creates an

25 obstacle to the full purposes and objectives of Congress" expressed in the immigration laws.

26 567 U.S. at 407, 410.

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - 8
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1    Resolution of the Government's "obstacle preemption [claim] at the pleading stage" is

2    appropriate under Ninth Circuit law. *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754

3    F.3d 754, 762 (9th Cir. 2014). Fact discovery is not necessary to ascertain that "federal

4    objectives and purposes will be obstructed" by implementation of the discriminatory measures

5    of the Executive Order. *Washington v. Geo Grp., Inc.*, 283 F. Supp. 3d 967, 978 (W.D. Wash.

6    2017). The applicability of the Executive Order—which calls itself a "[p]rohibition on

7    immigrant deportations," Ex. A, at 1 (title)—to the Government and those with whom it deals is

8    plain. *See City of Arcata*, 2009 WL 1774269, at *2 (finding ordinance invalid on obstacle

9    preemption grounds at the pleadings stage). The myriad factual inquiries the County insists

10   upon in its response, such as whether ICE could arrange for a fleet of Government-owned

11   planes that would be exempt from the County's order, or whether *other* airports closer to the

12   Seattle area than Yakima Air Terminal could be used, KC Opp'n 9, will shed no light on

13   whether the County has the legal authority to obstruct federal immigration operations.

14   Accordingly, the Executive Order is obstacle preempted and must be enjoined.

15   **VI.    THE COUNTY'S "MARKET PARTICIPANT" DEFENSE IS MERITLESS**

16   The County argues that the Executive Order is constitutional because it is acting in its

17   capacity as a "market participant," not a regulator. Such actions "are generally protected from

18   federal preemption." *Engine Mfrs. Ass'n v. S. Coast Air Quality Maint. Dist.*, 498 F.3d 1031,

19   1040 (9th Cir. 2007). But the County's efforts to ban immigration authorities from Boeing Field

20   do not satisfy this exception to preemption, for several reasons.

21   First, the County cites no case holding that the "market participant" exception applies to

22   intergovernmental immunity claims. The County weakly asserts that "the intergovernmental

23   immunity doctrine is 'conceptually similar' to the dormant commerce clause, which prohibits

24   discrimination against interstate commerce." KC Opp'n 11 (citing *W. Lynn Creamery v. Healy*,

25   512 U.S. 186, 200 n.17 (1994)). But unlike the Commerce Clause, which reserves to Congress

26   only the power to *regulate* commerce, *see* U.S. Const. art. I, sec. 8, cl. 3, there is no principled

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - 9
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

reason to limit the intergovernmental immunity doctrine to regulatory actions taken by state and local governments.  Since its earliest days, the intergovernmental immunity doctrine has been absolute: under the Supremacy Clause, states and localities "have *no power*, by taxation *or otherwise*, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819) (emphasis added). *Healy*, the sole case on which the County relies, does not address the "market participant" rule, and gives no license for the Court to create a novel exception to intergovernmental immunity.

The County also provides no authority for the application of the "market participant" exception to the Government's obstacle preemption arguments, which involve the exercise of the Federal Government's authority under immigration law.  Because it is "a presumption about congressional intent, the [market participant] doctrine may have a different scope under different federal statutes." *Engine Mfrs.*, 498 F.3d at 1042.  The cases the County relies upon in arguing the market participant exception applies here have nothing to do with immigration.  *Id.* (preemption under the Clean Air Act); *Airline Serv. Providers Ass'n v. L.A. World Airports (LAWA)*, 873 F.3d 1074, 1078 (9th Cir. 2017) (preemption under two labor law statutes and the Airline Deregulation Act)  The County fails to explain why Congress would have intended a "market participant" exemption to immigration law preemption at all, let alone one broad enough to permit obstructive local enactments like the Executive Order.

Even if the County overcame these threshold issues, it could prove no set of facts showing the defense applies here.  The County invokes the Executive Order's speculation that use of Boeing Field by immigration authorities "is inconsistent with the County's obligation to operate the airport in a safe and efficient manner" and "could adversely affect the willingness or ability of other persons to use, or engage in businesses at," Boeing Field, leading to "a negative effect on the financial sustainability" of the airport.  *Id.*, Preamble, at 2 (emphasis added).  But preemption and the "market participant" rule "evaluate[] what legislation *does*, not why

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - 10
*United States v. King County, WA*, No. 2:20-cv-203.

U.S. DEPARTMENT OF JUSTICE
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

1   legislators voted for it." *N. Ill. Chapter of Assoc. Builders & Contrs., Inc. v. Lavin*, 431 F.3d

2   1004, 1007 (7th Cir. 2005). The Executive Order does not actually address any of the concerns

3   noted in the Preamble. It simply discriminates based on who lessees and carriers do business

4   with, a classic regulatory decision. *See Wis. Dep't of Indus., Labor & Human Rels. v. Gould*

5   *Inc.*, 475 U.S. 282, 289 (1986) ("[B]y flatly prohibiting state purchases from repeat labor law

6   violators . . . Wisconsin's debarment scheme is tantamount to regulation.") (internal quotation

7   marks and citation omitted). Recognizing a market participant exception under these

8   circumstances would also conflict with the holding in *Movassaghi*, which prohibits singling out

9   the Government for unfavorable treatment outside of a general regulatory scheme. 768 F.3d at

10  842–43. The County's rationale is further weakened by the Executive Order's exemption for

11  "federal government aircraft." *Id.* ¶ 3. If the County's purported business concerns were

12  legitimate, they would apply regardless of whether the Federal Government or a contractor held

13  title to the aircraft used for these flights. *Cf. First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765,

14  792-93 (1978) (finding underinclusive nature of state law belied its supposed purposes). The

15  Executive Order is therefore nothing like the non-discriminatory "labor peace" agreements the

16  Ninth Circuit upheld in *LAWA*. In light of the County's actions, the "market participant"

17  provides no basis for denying judgment on the pleadings.

18  ## VII.   THE COUNTY'S "COMMANDEERING" DEFENSE IS MERITLESS

19        The County argues that it has a Tenth Amendment right to enforce the Executive Order.

20  Under that rule, the Government cannot force states or localities to enact or repeal a particular

21  law on its behalf, as in *New York v. United States*, 505 U.S. 144 (1992), and *Murphy v. National*

22  *Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018), or to enforce a federal program, as in *Printz v.*

23  *United States*, 521 U.S. 898 (1997). The defense is without merit here.

24        The County asserts, in reliance on the Ninth Circuit's decision in *California*, that it is

25  being coerced into assisting the Government with enforcing immigration law and in determining

26  the terms of the contracts it enters with its lessees. KC Opp'n 19–20. In *Murphy* the Supreme

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - 11
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1    Court held that the Tenth Amendment is not offended when "Congress enacts a law that

2    imposes restrictions or confers rights on private actors; a state law confers rights or imposes

3    restrictions that conflict with the federal law; and therefore the federal law takes precedence."

4    138 S. Ct. at 1480–81.  Congress has enacted immigration laws that "impose[] restrictions or

5    confer[] rights on private actors"—specifically, laws defining the procedures by which aliens

6    are detained and removed.  And the County has attempted to "impose[] restrictions that conflict

7    with the federal law" by threatening to discriminate against private parties who lease facilities at

8    Boeing Field and carriers who contract with the Government.  Compl. Ex. A, ¶¶ 3–5.  The

9    Government is not compelling the County's participation in immigration enforcement; rather, it

10   seeks to rescind the burdens of the Executive Order so that *the Government* and those with

11   whom it deals may carry out removal proceedings.

12          The County's argument would also stretch the anti-commandeering principle beyond

13   what the Ninth Circuit recognized in *California*.  Although the Government has petitioned for

14   certiorari in *California*, the statute at issue there, SB 54, limited itself to prohibiting forms of

15   cooperation necessary to transfer individuals from state custody to immigration custody.  Not

16   even SB 54 contemplated denying the Government information or resources available to the

17   general public.  *California*, 921 F.3d at 876 (noting that restrictions on sharing personal

18   information were "relaxed" if "information is available to the public").  Ruling in the

19   Government's favor would not require County officials to detain individuals, provide

20   immigration information to federal officials, or otherwise assist in the enforcement of federal

21   immigration law (any more than allowing federal officials to use County roads or access public

22   information about inmates at the County's jail constitutes "assistance" in the enforcement of

23   immigration law).  The County cites no case in which this sort of discrimination was justified

24   under the anti-commandeering doctrine.  The Court should reject it.

## CONCLUSION

25          For these reasons, the Court should grant the Government's Rule 12(c) motion.

26

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - 12
*United States v. King County, WA*, No. 2:20-cv-203.

U.S. DEPARTMENT OF JUSTICE
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

1

Dated: May 8, 2020

Respectfully submitted,

2

JOSEPH H. HUNT
Assistant Attorney General

3

4

BRIAN T. MORAN
United States Attorney

5

ALEXANDER K. HAAS
Director

6

7

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

8

*/s/ Michael J. Gerardi*
Michael J. Gerardi (D.C. Bar No. 1017949)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW, Room 12212
Washington, D.C. 20005
Tel: (202) 616-0680
Fax: (202) 616-8460
E-mail: michael.j.gerardi@usdoj.gov

9

10

11

12

13

*Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS  - 13
*United States v. King County, WA*, No. 2:20-cv-203.

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1

## CERTIFICATE OF SERVICE

2     The undersigned certifies that all participants in the case are registered CM/ECF users

3 and that service will be accomplished by the CM/ECF system on May 8, 2020.

4                                             /s/*Michael J. Gerardi*
                                              Michael J. Gerardi (D.C. Bar No. 1017949)
5                                             Trial Attorney
                                              United States Department of Justice
6                                             Civil Division, Federal Programs Branch
                                              1100 L St. NW, Room 12212
7                                             Washington, D.C. 20005
                                              Tel: (202) 616-0680
8                                             Fax: (202) 616-8460
                                              E-mail: michael.j.gerardi@usdoj.gov

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26