1

Hon. Robert J. Bryan

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

UNITED STATES OF AMERICA,

CASE NO. 2:20-cv-203

9

*Plaintiff*,

**[DRAFT] AGREEMENT
REGARDING DISCOVERY OF
ELECTRONICALLY STORED
INFORMATION AND
[PROPOSED] ORDER**

10

v.

11

KING COUNTY, WASHINGTON,
et al.,

12

*Defendants.*

13

The parties hereby stipulate to the following provisions regarding the discovery of

14

electronically stored information ("ESI") in this matter:

15

**A.    General Principles**

16

1.    An attorney's zealous representation of a client is not compromised by conducting

17

discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate

18

in facilitating and reasonably limiting discovery requests and responses raises litigation costs and

19

contributes to the risk of sanctions.

20

2.    As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P.

21

26(b)(1) must be applied in each case when formulating a discovery plan. To further the

22

application of the proportionality standard in discovery, requests for production of ESI and related

23

responses should be reasonably targeted, clear, and as specific as possible.

24

25

26

**B.    ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties in writing, each party shall disclose:

1.    <u>Custodians.</u> The five custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.  The parties will confer in good faith if, after review of documents from these initial custodians, one or both parties believe additional custodial collections are necessary.

2.    <u>Non-Custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

3.    <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.    <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B). Data sources set forth in Section (D)(3) of this Agreement are exempt from this requirement.

**C.    ESI Discovery Procedures**

1.    <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by written agreement of the parties.

2.    <u>Search methodology.</u> The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

a.    Prior to running searches:

i.    The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query.

ii.    The requesting party is entitled, within 14 days of the producing party's disclosure, to add no more than 10 search terms or queries to those disclosed by the producing party absent a showing of good cause or written agreement of the parties.

iii.    The following provisions apply to search terms / queries of the requesting party.  Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided.  A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and provide a counter proposal correcting the overbroad search or query.

b.      After production:  Within 21 days of the producing party notifying the receiving party that it has substantially completed the production of documents responsive to a request, the responding party may request no more than 10 additional search terms or queries. The immediately preceding section (Section C.2.a.iii) applies.

3.      <u>Format.</u>

ESI will be produced to the requesting party in accordance with the formatting specifications described in the Civil Division's "Specifications for Production of ESI and Digitized ("Scanned") Images" ("Production Specifications"), attached to this Agreement as Exhibit A subject to the exceptions set forth in subsection C.6 herein.

4.      <u>De-duplication.</u> The parties may de-duplicate their ESI production across all custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process but tracked in a duplicate/other custodian field in the database load file.  Only exact duplicates as tracked by the MD5 hash field will be removed.

5.      <u>Email Threading.</u>  The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies.  Lesser inclusive versions of an email chain shall be produced when the most inclusive email would not contain an attachment that was attached in a lesser inclusive email.  Emails where conversations branch off (such as forwarded emails or when a subset of participants have a concurrent conversation) shall not be considered a lesser inclusive of an email thread. Upon reasonable request, the producing party will produce a less inclusive copy.  E-mail threading procedures shall be consistent with section 4 of the Production Specifications.

6.      <u>Metadata fields.</u> The parties agree to produce metadata, to the extent it is reasonably accessible and non-privileged, as described in section 3 of the Production Specifications.  Except that the following metadata fields will not be produced: AttachIDs, ConvIndex, Date Time Accd, Date Time Mod, DocDate, Extended properties, Group ID, Message Header, Message Type, and Properties.  The parties will, however, produce Beginning and End Attachment IDs.

7.      <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an electronic format, they shall follow the procedures for doing so outlined in the Production Specifications.

**D.      Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1.      Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.      The parties will supplement their disclosures (including those made pursuant to Section B, *supra*) in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections D.3 or E.1–2).

1    3.    Absent a showing of good cause by the requesting party, the following categories

2    of ESI need not be preserved:

3    a.    Deleted, slack, fragmented, or other data only accessible by forensics.

4    b.    Random access memory (RAM), temporary files, or other ephemeral data
         that are difficult to preserve without disabling the operating system.

5    c.    On-line access data such as temporary internet files, history, cache,
6         cookies, and the like.

7    d.    Data in metadata fields that are frequently updated automatically, such as
         last-opened dates (see also Section E.5).

8    e.    Back-up data that are duplicative of data that are more accessible
9         elsewhere.

10   f.    Server, system or network logs.

11   g.    Data remaining from systems no longer in use that is unintelligible on the
         systems in use.

12   h.    Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or
13        from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that
          a copy of all such electronic data is automatically saved in real time
          elsewhere (such as on a server, laptop, desktop computer, or "cloud"
14        storage).

## E.    Privilege

15

16   1.    A producing party shall create a privilege log of all documents fully withheld from

17   production on the basis of a privilege or protection, unless otherwise agreed or excepted by this

18   Agreement and Order. Privilege logs shall include a unique identification number for each

19   document and the basis for the claim (attorney-client privileged or work-product protection). For

20   ESI, the privilege log may be generated using available metadata, including author/recipient or

21   to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata

22   provide insufficient information for the purpose of evaluating the privilege claim asserted, the

23   producing party shall include such additional information as required by the Federal Rules of

24   Civil Procedure. Privilege logs will be produced to all other parties no later than 60 days after

25   [DRAFT] AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
     STORED INFORMATION AND [PROPOSED] ORDER                          PAGE - 6
26   (Case No. 2:20-CV-203)

1    delivering a production unless an earlier deadline is agreed to by the parties.

2        2.    Redactions need not be logged so long as the basis for the redaction is clear on the

3    redacted document.

4        3.    With respect to privileged or work-product information generated after the filing

5    of the complaint, parties are not required to include any such information in privilege logs.

6        4.    Activities undertaken in compliance with the duty to preserve information are

7    protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

8        5.    Pursuant to Fed. R. Evid. 502(d), the production of any documents in this

9    proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding,

10   constitute a waiver by the producing party of any privilege applicable to those documents,

11   including the attorney-client privilege, attorney work-product protection, or any other privilege

12   or protection recognized by law.  Information produced in discovery that is protected as privileged

13   or work product shall be immediately returned to the producing party, and its production shall not

14   constitute a waiver of such protection.

15

16   DATED: _____

17

18   | JOSEPH H. HUNT | HARRIGAN LEYH FARMER & THOMSEN LLP |
     | Assistant Attorney General | |
     | | By: _s/ Timothy G. Leyh_____ |
     | BRIAN T. MORAN | By: _s/ Kristin E. Ballinger_____ |
     | United States Attorney | By: _s/ Shane P. Cramer_____ |
     | | Timothy G. Leyh, WSBA #14853 |
     | ALEXANDER K. HAAS | Kristin E. Ballinger, WSBA #28253 |
     | Director | Shane P. Cramer, WSBA #35099 |
     | | 999 Third Avenue, Suite 4400 |
     | JACQUELINE COLEMAN SNEAD | Seattle, WA 98104 |
     | Assistant Branch Director | Tel:  (206) 623-1700 |
     | | Email: timl@harriganleyh.com |
     | | Email: kristinb@harriganleyh.com |
     | | Email: shanec@harriganleyh.com |

25   [DRAFT] AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
     STORED INFORMATION AND [PROPOSED] ORDER                    PAGE - 7
26   (Case No. 2:20-CV-203)

| | |
|---|---|
| */s/ Michael J. Gerardi*<br>Michael J. Gerardi<br>(D.C. Bar No. 1017949)<br>Trial Attorney<br>United States Department of Justice<br>Civil Division, Federal Programs<br>Branch<br>1100 L St. NW, Room 12212<br>Washington, D.C. 20005<br>Tel: (202) 616-0680<br>Fax: (202) 616-8460<br>E-mail: michael.j.gerardi@usdoj.gov<br><br>*Attorneys for Plaintiff* | DANIEL T. SATTERBERG<br>King County Prosecuting Attorney<br><br>By: *s/ Timothy P. Barnes*<br>By: *s/ H. Kevin Wright*<br>    Timothy P. Barnes, WSBA #29929<br>    H. Kevin Wright, WSBA #19121<br>    Senior Deputy Prosecuting Attorneys<br>    516 Third Avenue, Suite W400<br>    Seattle, WA 98104<br>    Tel:  (206) 477-1120<br>    Fax:  (206) 296-0191<br>    Email: timothy.barnes@kingcounty.gov<br>    Email: kevin.wright@kingcounty.gov<br><br>*Attorneys for King County and Dow Constantine* |

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2020, I served a copy of this [Draft] Agreement Regarding Discovery of Electronically Stored Information and [Proposed] Order on all counsel of record in the case by filing it on the CM / ECF system.

*/s/Michael J. Gerardi*

Michael J. Gerardi

1

2

3

## ORDER

4

Based on the foregoing, IT IS SO ORDERED.

5

DATED: _____

6

7

                _____

The Honorable Robert J. Bryan
UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT A

## Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

### Collection of Electronically Stored Information (ESI)

Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process.

**1.      Specification Modifications**

Any modifications or deviations from the Production Specifications may be done only with the express permission of the government and these modifications or deviations should be communicated to the government and approved by the government in written form.  Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and, therefore, arrangements should be made with the government to facilitate their production.

**2.      Production Format of ESI and Imaged Hard Copy**

Responsive ESI and imaged hard copy shall be produced in the format outlined below.  All ESI, except as outlined below in sections 5 – 20, shall be rendered to TIFF image format, and accompanied by a Concordance® Image Cross Reference file. All applicable metadata/database (see section 3 below) shall be extracted and provided in Concordance® load file format.

   **a.      Image File Format:** All images, paper documents scanned to images, or rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image.

   i.   All TIFF file names shall include the unique Bates number burned into the image.  (See paragraph 21, below, regarding Bates number instructions.)
   ii.  All TIFF image files shall be stored with the ".tif" extension.
   iii. Images shall be OCR'd using standard COTS products.
       1. An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images.  The report shall include the DOCID or Bates number(s) corresponding to each such image.
           a. All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.
           b. No image folder shall contain more than 2000 images.

   **b.      Concordance® Image Cross Reference file:** Images should be accompanied by a Concordance® Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF image file.  The Cross Reference file should also contain the image file path for each Bates numbered page.

   i.   Image Cross Reference Sample Format:

           ABC00000001,OLS,D:\DatabaseName\Images\001\ ABC00000001.TIF,Y,,,
           ABC00000002,OLS,D:\DatabaseName\Images\001\ ABC00000002.TIF,,,,
           ABC00000003,OLS,D:\DatabaseName\Images\001\ ABC00000003.TIF,,,,

## Specifications for Production of ESI and Digitized ("Scanned") Images
## ("Production Specifications")

ABC00000004,OLS,D:\DatabaseName\Images\001\ ABC00000004.TIF,Y,,,

**c.   Concordance® Load File**: Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment.  The file should contain the required fields listed below in section 3.

    i.      Text delimited load files are defined using the standard Concordance delimiters.  For example:

| | |
|---|---|
| *Field Separator* | *¶ or Code 020* |
| *Text Qualifier* | *þ or Code 254* |

    ii.      This load file should also contain hyperlinks to applicable native files, such as Microsoft Excel or PowerPoint files.
    iii.      There should be one line for every record in a collection.
    iv.      The load file must contain a header listing the metadata/database fields contained within.  For example, if the data file consists of a First Page of a Record (BegDoc#), Last Page of a Record (ending Bates / ENDDOC#), DOCID, DOCDate, File Name, and a Title, then the structure may appear as follows:

þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

**d.   The extracted/OCR** text should be provided for each document as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

**e.   Directory and folder structure:**  The directory structure for productions should be:
\\*CaseName*\\**LoadFiles**
\\*CaseName*\\**Images** < For supporting images (can include subfolders as needed, should not include more than 2,000 files per folder)
\\*CaseName*\\**Natives** <Native Files location (can include subfolders as needed, should not include more than 2,000 files per folder)
\\*CaseName*\\**Text** <Extracted Text files location (can include subfolders as needed, should not include more than 2,000 files per folder)

## Specifications for Production of ESI and Digitized ("Scanned") Images
## ("Production Specifications")

### 3.      Required Metadata/Database Fields

A "✓" denotes that the indicated field should be present in the load file produced.  "Other ESI" includes data discussed in sections 5 – 20 below, but does not include email, email repositories (section 11), "stand alone" items (section 12), and imaged hard copy material (section 9).  Email, email repositories, and "stand alone" materials (section 12) should comply with "Email" column below.  Imaged hard copy materials should comply with the "Hard Copy" column.

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| COLLECTION SOURCE | Name of the Company/Organizati on data was collected from | Text | 160 | ✓ | ✓ | ✓ |
| SOURCE ID (BOX #) | Submission/volume/ box number | Text | 10 | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | Text | 160 | ✓ | ✓ | ✓ |
| AUTHOR | Creator of the document | Text | 500 | | | ✓ |
| BEGDOC# | Start Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC# | End Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Text | 60 | ✓ | ✓ | ✓ |
| PGCOUNT | Page Count | Number | 10 | ✓ | ✓ | ✓ |
| GROUPID | Contains the Group Identifier for the family, in order to group files with their attachments | Text | 60 | | ✓ | ✓ |
| PARENTID | Contains the Document Identifier of an attachment's parent | Text | 60 | | ✓ | ✓ |
| ATTACHIDS | Child document list; Child DOCID or Child Start Bates | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |

September 2017

## Specifications for Production of ESI and Digitized ("Scanned") Images
## ("Production Specifications")

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| ATTACHLIST | List of Attachment filenames | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BEGATTACH | Start Bates number of first attachment | Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Text | 60 | ✓ | ✓ | ✓ |
| PROPERTIES | Privilege notations, Redacted, Document Withheld Based On Privilege | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| RECORD TYPE | Use the following choices: Image, Loose E-mail, E-mail, E-Doc, Attachment, Hard Copy or Other.  If using Other, please specify what type after Other | Text | 60 | ✓ | ✓ | ✓ |
| FROM | Author - format: Last name, First name. | Text | 160 | | ✓ | ✓ |
| TO | Recipient - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| CC | Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject line/Document Title | Text | Unlimited | | ✓ | ✓ |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited | | ✓ | |
| DOCDATE | Last Modified Date for files and Sent date for e-mail, this field inherits the date for attachments from their parent. | Date | MM/DD/YYYY | | ✓ | ✓ |

4

*September 2017*

### Specifications for Production of ESI and Digitized ("Scanned") Images
### ("Production Specifications")

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | ✓ | ✓ | ✓ |
| DATE TIME SENT | Date Sent (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME CRTD | Date Created (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME SVD | Date Saved (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME MOD | Date Last Modified (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME RCVD | Date Received (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |
| DATE TIME ACCD | Date Accessed (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| FILE SIZE | Native File Size in bytes | Number | 10 | | | ✓ |
| FILE NAME | File name - name of file as it appeared in its original location | Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Text | 160 | | ✓ | ✓ |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | Text | Unlimited | | ✓ | ✓ |

5

*September 2017*

### Specifications for Production of ESI and Digitized ("Scanned") Images
### ("Production Specifications")

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited | | ✓ | ✓ |
| FOLDER ID | Complete E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | ✓ | ✓ | ✓ |
| PARAGRAPH REQUEST NUMBER | Subpoena/request paragraph number to which the document is responsive. Use semicolon to delimit multiple entries. | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| MD5 HASH | MD5 Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | E-mail header.  Can contain IP address | Text | Unlimited | | ✓ | |
| ATTACHMCOUNT | Number of attachments (any level child document) associated with a ParentID | Text | 10 | | ✓ | |
| FILE TYPE | Identifies the application that created the file Type of file, not to be confused with file extension | Text | 160 | | ✓ | ✓ |
| COMMENTS | Identifies whether the document has comments associated with it | Text | 10 | | ✓ | ✓ |
| MESSAGE TYPE | Exchange Message class or equivalent | Text | 60 | | ✓ | |
| EXTENDED PROPERTIES | For PDFs Only | Text | 600 | | ✓ | ✓ |

6

## Specifications for Production of ESI and Digitized ("Scanned") Images
## ("Production Specifications")

**4.      Search, De-Duplication, Near-Duplicate Identification, E-mail Conversation Threading and Other Culling Procedures**

De-duplication of exact copies <u>within</u> a custodian's data may be done at the family level, but all file paths and custodians must be provided for each duplicate document in an exception report in .csv format.  The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate, or near-deduplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the government.  All objective coding (e.g., near duplicate ID or e-mail thread ID) shall be discussed and produced to the government as additional metadata fields.  The recipient will not employ analytic software or technology to search identify, or review potentially responsive material, including but not limited to technology assisted review (TAR) or predictive coding, without first discussing with the government.

**5.      Hidden Text**

All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file.  For files that cannot be expanded the native files shall be produced with the image file.

**6.      Embedded Files**

All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced.  For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

**7.      Image-Only Files**

All image-only files (non-searchable .pdfs, multi-page TIFFs, Snipping Tool and other screenshots, etc., as well as all other images that contain text) shall be produced with OCR text and metadata/database fields identified in section 3 for "Other ESI."

**8.      Encrypted Files**

Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production.

> **a.**      The unencrypted text shall be extracted and provided per section 2.c. The unencrypted files shall be used to render images and provided per sections 2.a and 2.b. The unencrypted native file shall be produced pursuant to sections 10-20.
> **b.**      If such protected data is encountered but unable to be processed, each file or container shall be reported as an exception in the accompanying Exception Report (pursuant to section 26) and shall include all available metadata associated with the data, including custodian information.

**9.      Production of Imaged Hard Copy Records**

All imaged hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID).

### Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

**a.** Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder).

**b.** The first document in the collection represents the parent document and all other documents will represent the children.

**c.** All imaged hard copy documents shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). All documents shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image. Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.

**d.** All objective coding (e.g., document date or document author) should be discussed and produced to the government as additional metadata/database fields.

### 10.    Production of Spreadsheets and Presentation Files

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), with an associated placeholder image and endorsed with a unique Bates number. *See* section 20 below. The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. No alteration shall be made to file names or extensions for responsive native electronic files.

### 11.    Production of E-mail Repositories

E-mail repositories, also known as e-mail databases (e.g., Outlook PST, Lotus NSF, etc.), can contain a variety of items, including: messages, calendars, contacts, tasks, etc. For purposes of production, responsive items shall include the "E-mail" metadata/database fields outlined in section 3, including but not limited to all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to e-mail or other items) with the parent/child relationship preserved. Our preferred format for e-mail productions is PST. E-mail should NOT be provided in X400 or X500 format. E-mail databases from systems other than Microsoft Exchange shall be produced after consultation with and written consent of the government about the format for the production of such databases.

### 12.    Production of Items Originally Generated in E-mail Repositories but Found and Collected Outside of E-mail Repositories, i.e., "Stand-alone" Items

Any parent e-mail or other parent items (e.g., calendar, contacts, tasks, notes, etc.) found and collected outside of e-mail repositories (e.g., items having extensions .msg, .htm, .mht, etc.), shall be produced with the "Loose E-mail" metadata fields outlined in section 3, including but not limited to any attachments, maintaining the family (parent/child) relationship.

### 13.    Production of Instant Messenger (IM), Voicemail Data, Audio Data, Video Data, etc.

The responding party shall identify, collect, and produce any and all data which is responsive to the requests which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (e.g., GoTo Meeting, WebEx), and related/similar technologies. However, such data, logs, metadata or other files related thereto, as well as other

### Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

less common but similar data types, shall be produced after consultation with and written consent of the government about the format for the production of such data.

**14.     Production of Social Media**

Prior to any production of responsive data from social media (e.g., Twitter, Facebook, Google+, LinkedIn, etc.) the producing party shall first discuss with the government the potential export formats before collecting the information, to ensure it is collected and produced in a way that preserves the original metadata, has a clear chain of custody, and provides as much information as possible regarding the source and history of each individual communication.

Social media platforms offer different functions, forms of content, and capability for downloading accounts.  Because of these differences, prior to collection of social media data, the producing party must discuss with the government the available export and production methods and formats that the producing party is considering.  Unless the government agrees to an alternative in writing, regardless of the social media platform, productions of social media content must meet the following general requirements:  (1) separate (2) searchable (3) static images of (4) each responsive posting on the social media platform, (5) all related content (e.g., comments, likes, share or re-transmittal information, images, videos, linked documents and content), and (6) associated metadata (e.g., user name(s), date, and time of all posts, comments, likes, share or re-transmittals).

These general requirements are in addition to any more specific requirements in a particular request (e.g., geolocation data), and the producing party must ask the government about any perceived conflict between these requirements and another source of specifications or requirements.  If available from the social media platform or through social media data processing software, files that facilitate interactive review of the data (i.e., html files) as well as load files in .csv format must be produced with the associated content.

**15.     Production of Structured Data**

Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, etc.), the producing party shall first identify the database type and version number, provide the database dictionary and any user manuals, or any other documentation describing the structure and/or content of the database and a list of all reports that can be generated from the database. The list of reports shall be provided in native Excel (.xls or .xlsx) format.

**16.     Production of Structured Data from Proprietary Applications**

Prior to any production of structured data from proprietary applications (e.g., proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint etc.) the producing party shall first provide the database dictionary and a list of all reports that can be generated from the structured database.  The list of reports shall be produced in native Excel (.xls or .xlsx) format.

**17.     Production of Photographs with Native File or Digitized ESI**

Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured/created.  All JPEG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

## Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

**18.      Production of Images from which Text Cannot be OCR Converted**

An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images.  The report shall include the DOCID or Bates number(s) corresponding to each such image.

**19.      Production of ESI from Non-PC or Non-Windows-based Systems**

If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes, and UNIX machines, Android device, etc.), the ESI shall be produced after discussion with and written consent of the government about the format for the production of such data.

**20.      Production of Native Files (When Applicable Pursuant to These Specifications)**

Production of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3.

ESI shall be produced in a manner which is functionally usable by the government.  The following are examples:

      **a.**      AutoCAD data, e.g., DWG and DXF files, shall be processed/converted and produced as single-page JPG image files and accompanied by a Concordance® Image formatted load file as described above. The native files shall be placed in a separate folder on the production media and linked by a hyperlink within the text load file.
      **b.**      GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.
      **c.**      Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

**21.      Bates Number Convention**

All images should be assigned Bates numbers before production to the government.  Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page.  The numbers should be endorsed on the actual images at a location that does not obliterate, conceal, or interfere with any information from the source document.  Native files should be assigned a single Bates number for the entire file which will represent the native document in the load/dat file. The load/dat file will include a reference to the native file path and utilize the NATIVELINK metadata field.  The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion.  The Bates number shall be a unique number given to each page (when assigned to an image) or to each document (when assigned to a native file).  If the parties agree to a rolling production, the numbering convention shall remain consistent throughout the entire production.  There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation."  Below is a sample of dot notation:

      PREFIX0000001              PREFIX0000003
      PREFIX0000001.001      PREFIX0000003.001
      PREFIX0000001.002      PREFIX0000003.002

September 2017

## Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications")

### 22.    Media Formats for Storage and Delivery of Production Data

Electronic documents and data shall be delivered on any of the following media:

**a.**    CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications; Blu-ray.
**b.**    External hard drives (USB 3.0 or higher, Firewire or eSATA, formatted to NTFS format specifications) or flash drives.
**c.**    Storage media used to deliver ESI shall be appropriate to the size of the data in the production.
**d.**    Media should be labeled with the case name, production date, Bates range, and producing party.

### 23.    Virus Protection and Security for Delivery of Production Data

Production data shall be free of computer viruses.  Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the government. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions.  No encryption software shall be used without the written consent of the government.

### 24.    Compliance and Adherence to Generally Accepted Technical Standards

Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

### 25.    Read Me Text File

All deliverables shall include a "read me" text file at the root directory containing:  total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats.  The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

### 26.    Exception Report

An exception report, in .csv format, shall be included, documenting any production anomalies utilizing the electronic Bates number (DOCID or control numbering) assigned during the collection, processing, and production phases.

### 27.    Transmittal Letter to Accompany Deliverables

All deliverables should be accompanied by a transmittal letter including the production date, case name and number, producing party name, and Bates number range produced.

-XXX-