The Honorable Robert J. Bryan

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

UNITED STATES OF AMERICA,

      Plaintiff,

    v.

KING COUNTY, WASHINGTON; DOW
CONSTANTINE, in his official capacity as
King County Executive

      Defendants.

Case No. 2:20-cv-203 RJB

UNITED STATES' RENEWED
MOTION FOR JUDGMENT ON THE
PLEADINGS, OR, IN THE
ALTERNATIVE, FOR SUMMARY
JUDGMENT

ORAL ARGUMENT REQUESTED

**NOTE ON MOTION CALENDAR:**
**February 15, 2023**

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT
*United States v. King County, WA*, No. 2:20-cv-203 RJB

U.S. DEPARTMENT OF JUSTICE
1100 L St., NW
Washington, DC 20005
Tel: (202) 616-0680

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 2

I. ICE AIR OPERATIONS ............................................................................................ 2

II. THE EXECUTIVE ORDER AND ITS CONSEQUENCES ............................................ 2

STANDARD OF REVIEW ................................................................................................. 5

ARGUMENT .................................................................................................................... 5

I. THE UNITED STATES IS ENTITLED TO JUDGMENT ON THE PLEADINGS. ...... 5

    A. The Federal Government's Claims Are Presently Justiciable. ................................ 6

    B. Judgment on the Pleadings Is Appropriate as to the Federal Government's
       Intergovernmental Immunity Claim. ........................................................... 11

II. THE FEDERAL GOVERNMENT ALTERNATIVELY IS ENTITLED TO
    SUMMARY JUDGMENT. ....................................................................................... 13

    A. Uncontroverted Evidence Obtained in Discovery Confirms the Federal
       Government's Present Injury. ....................................................................... 14

    B. Uncontroverted Record Evidence Also Requires Summary Judgment on the
       Merits of the United States' Intergovernmental Immunity Claim. ........................ 16

    C. The Executive Order Violates the Airline Deregulation Act. ................................. 18

    D. The Executive Order Conflicts with the United States' Conveyance of Boeing
       field to King County. ................................................................................. 20

CONCLUSION ................................................................................................................. 22

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - i
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Air Transport Ass'n of Am. v. City & Cnty. of S.F.*,

4
  266 F.3d 1064 (9th Cir. 2001) ................................................................ 18, 19, 20

5

*Air Transport Ass'n of Am. v. City & Cnty. of S.F.*,
  992 F. Supp. 1149 (N.D. Cal. 1998),

6
    *aff'd in relevant part*, 266 F.3d 1064 (9th Cir. 2001) ..................................... 19

7

*Airline Serv. Providers Ass'n v. L.A. World Airports*,

8
  873 F.3d 1074 (9th Cir. 2017) ...................................................................... 18, 19

9

*Am. Airlines, Inc. v. Wolens*,
  513 U.S. 219 (1995) ........................................................................................... 18

10

*Arapahoe Cnty. Pub. Airport Auth. v. F.A.A.*,

11
  242 F.3d 1213 (10th Cir. 2001) ......................................................................... 18

12

*Boeing Company v. Movassaghi*,

13
  768 F.3d 832 (9th Cir. 2014) ................................................................ 12, 13, 16, 17

14

*Brown v. Voss*,
  715 P.2d 514 (Wash. 1986)................................................................................. 21

15

*Charas v. Trans World Airlines, Inc.*,

16
  160 F.3d 1259 (9th Cir. 1998) ........................................................................... 18

17

*City of Olympia v. Palzer*,

18
  728 P.2d 135 (Wash. 1986)................................................................................. 21

19

*Comm. of Cent. Am. Refugees v. INS*,

20
  795 F.2d 1434 (9th Cir.), *amended as*, 807 F.2d 769 (9th Cir. 1986) ..................... 7

21

*Cotton v. United States*,
  52 U.S. (11 How.) 229 (1850) ............................................................................ 21

22

*Dept of Com. v. New York*,

23
  139 S. Ct. 2551 (2019)....................................................................................... 10

24

*Geo Group v. Newsom*,
  50 F.4th 745 (9th Cir. 2022) ...................................................................*passim*

25

*GEO Group, Inc. v. City of Tacoma*,

26
  No. 3:18-cv-05233-RBL, 2019 WL 5963112 (W.D. Wash. Nov. 13, 2019) ................. 13

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - ii
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
  896 F.2d 1542 (9th Cir. 1989) ........................................................................... 5

*Hamilton Materials, Inc. v. Dow Chem. Corp.*,
  494 F.3d 1203 (9th Cir. 2007) ......................................................................... 13

*Hancock v. Train*,
  426 U.S. 167 (1976) ......................................................................................... 10

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*,
  623 F.3d 1011 (9th Cir. 2010) ......................................................................... 19

*Kutschinski v. Thompson*,
  138 A. 569 (N.J. 1927) ..................................................................................... 21

*Mayo v. United States*,
  319 U.S. 441 (1943) ......................................................................................... 10

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ......................................................................................... 15

*Mendia v. Garcia*,
  768 F.3d 1009 (9th Cir. 2014) ......................................................................... 14

*Miami-Dade Cnty. v. United States*,
  No. 01-1930-CIV, 2003 WL 22992283 (S.D. Fla. Dec. 4, 2003) .................... 21

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
  508 U.S. 656 (1993) ......................................................................................... 10

*North Dakota v. United States*,
  495 U.S. 423 (1990) ......................................................................................... 11

*Powell's Books, Inc. v. Kroger*,
  622 F.3d 1202 (9th Cir. 2010) ........................................................................... 8

*Public Utilities  v. United States*,
  355 U.S. 534 (1958) ........................................................................................... 9

*S. Idaho Conf. Ass'n of Seventh Day Adventists v. United States*,
  418 F.2d 411 (9th Cir. 1969) ........................................................................... 21

*Seminole Tribe of Fl. v. Florida*,
  517 U.S. 44 (1996) ............................................................................................. 6

*Snyder v. Hayes*,
  217 P.3d 787 (Wash. Ct. App. 2009) ............................................................... 21

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - iii
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010).................................................................................................... 9

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014).................................................................................................. 10

*United States v. California*,
   921 F.3d 865 (9th Cir. 2019) .............................................................................. 11, 16

*United States v. City of Arcata*,
   629 F.3d 986 (9th Cir. 2010) ........................................................................... 6, 8, 17

*United States v. Students Challenging Regul. Agency Procedures*,
   412 U.S. 669 (1973).................................................................................................... 8

*United States v. Texas*,
   143 U.S. 621 (1892).................................................................................................... 6

*United States v. Washington*,
   142 S. Ct. 1976 (2022)...................................................................................... 1, 11, 12

*Washington v. GEO Group, Inc.*,
   No. 3:17-cv-05806-RJB, 2018 WL 6448778 (W.D. Wash. Dec. 10, 2018)............. 13

**Statutes**

6 U.S.C. § 112 ............................................................................................................ 2, 3

8 U.S.C. § 1231 ............................................................................................................... 7

49 U.S.C. § 41713 ................................................................................... 2, 10, 17, 19

Amendments to Surplus Property Act of 1944,
   Pub. L. No. 80-289, 61 Stat. 678 (Jan. 3, 1944) .................................................. 20

**Legislative Matierals**

123 Cong. Rec. 30 (Sept. 23, 1977)............................................................................. 19

**Rules**

Federal Rule of Civil Procedure 12(c).......................................................................... 1

Federal Rule of Civil Procedure 56 .......................................................................... 1, 5

**Regulations**

48 C.F.R. § 3017.204-90............................................................................................... 8

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - iv
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

**Other Authorities**

Center for Human Rights, Univ. of Wash., *Hidden In Plain Sight: King County Collaboration with ICE Air Deportation Flights at Boeing Field* (Apr. 23, 2019), https://jsis.washington.edu/humanrights/2019/04/23/ice-air-king-county/ ............................ 20

Dominic Gates, *Workers Protest Angrily Near Boeing's Everett Plant Against Vaccination Mandate*, THE SEATTLE TIMES (Oct. 16, 221), https://www.seattletimes.com/business/boeing-aerospace/workers-protest-angrily-at-boeings-everett-plant-against-vaccination-mandate/ ... 17

FAA, Advisory Circular: "Exclusive Rights at Federally Obligated Airports" (Jan. 3, 2006) https://perma.cc/PVP3-Q6JK .................................................................................... 13

Farah Jadran, *Demonstrators Gather Outside Starbucks Headquarters in Seattle to Protest 'Investor Day' Event*, KING 5 NEWS (Sept. 13, 2022), https://www.king5.com/article/news/local/seattle/seattle-capitol-hill-starbucks-strike-investor-day-protest/281-1fe7b818-1bd8-4b1e-b465-add8bac859cc .................................................................................... 17

King County, *Executive Constantine Directs Actions Against ICE Detainee Flights From King County Airport*, (Apr. 23, 2019), https://kingcounty.gov/elected/executive/constantine/news/release/2019/April/23-ICE-KCIA.aspx ........................................................ 14

*Through*, *Merriam-Webster*, https://perma.cc/BD3Q-VWMW .................................................. 22

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - v
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

**INTRODUCTION**

The United States of America respectfully renews its prior motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) challenging *King County International Airport – Prohibition on Immigrant Deportations*, PFC-7-1 EO, (Apr. 23, 2019) (the "Executive Order"). The Executive Order effectively bars fixed-base operators ("FBOs") at King County International Airport—commonly known as Boeing Field—from providing to U.S. Immigration and Customs Enforcement ("ICE") the same services that are provided to all other airport customers. In the alternative, and to the extent the Court concludes that facts outside the pleadings are necessary to adjudicate the Federal Government's claims, the United States moves for summary judgment on the same grounds pursuant to Federal Rule of Civil Procedure 56.

The Court previously denied the Federal Government's motion for judgment on the pleadings because of concerns regarding Article III standing and ripeness. *See* Order Denying Mot. for J. on Pleadings 4–7, ECF No. 26 ("Order Denying MJOP"). However, there can now be no doubt that the Court should resolve those issues in the United States' favor based on the recent *en banc* decision of the U.S. Court of Appeals for the Ninth Circuit, in *Geo Group v. Newsom*, 50 F.4th 745 (9th Cir. 2022), which held, among other things, that the United States has standing to challenge laws that facially discriminate against those with whom it deals, like FBOs supporting ICE. Although the pleadings are sufficient to show the United States' standing, the evidence the Federal Government has obtained in discovery further confirms that the Executive Order causes its present injury.

With Article III standing and ripeness now established, the Court should conclude that the Executive Order violates the Supremacy Clause. Another decision not previously available to the Court—*United States v. Washington*, 142. S. Ct. 1976 (2022)—confirms that the Executive Order is unlawful on its face under principles of intergovernmental immunity. There, the Supreme Court held that state or local laws, like the Executive Order, that "discriminate against the Federal Government or its contractors" by "singl[ing] them out for less favorable

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT - 1
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1  treatment" and "regulat[ing] them unfavorably on some basis related to their governmental

2  status" violate the Supremacy Clause.  *Id.* at 1979 (cleaned up; internal quotations omitted).

3      The Executive Order also violates the express preemption provisions of the Airline

4  Deregulation Act ("ADA"), 49 U.S.C. § 41713(b)(1), and it is inconsistent with the County's

5  obligations to the Federal Government under the Instrument of Transfer that conveyed title to

6  Boeing Field from the United States.  On any of these independent bases, the Court should grant

7  this motion and enjoin the Executive Order from any current or future enforcement.

8                                    **BACKGROUND**

9  **I.      ICE AIR OPERATIONS**

10     "At the direction of Congress, [ICE] carries out extensive detention operations" through

11  the use of federal contractors.  *Geo Group*, 50 F.4th at 750; *see also id.* at 751 (explaining the

12  Secretary of the Department of Homeland Security's "general administrative powers to contract

13  with private parties" (citing 6 U.S.C. § 112(b)(2))).  ICE's Air Operations Division ("ICE Air")

14  is the air transportation arm of ICE that supports the agency's congressional mandate by

15  providing air transportation related to the detention and removal of noncitizens to destinations

16  worldwide.  *See* U.S. Immigration & Customs Enforcement, ICE Air Operations Fact Sheet

17  ("ICE Air Fact Sheet"), available at https://www.ice.gov/factsheets/ice-air-operations (last

18  visited Dec. 14, 2022) (attached as Ex. 1 to the Declaration of Bradley Humphreys

19  ("Humphreys Decl."), filed herewith); *see also* Compl. ¶¶ 20–21, ECF No. 1.  Since 2006, ICE

20  Air "has transferred and/or removed hundreds of thousands of noncitizens using air charter

21  services."  ICE Air Fact Sheet; Compl. ¶ 21.  Chartered services are a critical part of ICE Air's

22  work, because "[ICE Air] procures the majority of its charter flight services from vendors

23  through the General Services Administration (GSA) Schedule."  ICE Air Fact Sheet.

24  **II.      THE EXECUTIVE ORDER AND ITS CONSEQUENCES**

25     The County Executive for King County, Dow Constantine, signed the Executive Order

26  on April 23, 2019.  The Executive Order states in its preamble that King County has put policies

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - 2
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1    "in place to guarantee that [it] does not partner nor collaborate with [ICE]," such as refusing to

2    honor ICE detainees in its correctional facilities.  Compl., Ex. A at 1, ECF No. 1-1.  The County

3    alleges that it "became aware" in 2018 "that aircraft operated by charter operators were

4    providing services to [ICE] at [Boeing Field] . . . for transportation of immigration detainees."

5    *Id.*  The Executive Order speculates that ICE's use of Boeing Field "could lead to human rights

6    abuses and violations in contravention of the policies and ordinances of King County and

7    international treaty obligations concerning human rights."  *Id.*  The Executive Order also asserts

8    that use of Boeing Field to carry out immigration law "is inconsistent with the County's

9    obligation to operate the airport in a safe and efficient manner . . . and further use of [Boeing

10   Field] in this manner would be detrimental to the public welfare and could adversely affect the

11   willingness or ability of other persons to use, or engage in businesses at," Boeing Field.  *Id.* at

12   1–2.

13        The Executive Order thus directs that Boeing Field "shall not support the transportation

14   and deportation of immigration detainees in the custody of [ICE], either traveling within or

15   arriving or departing the United States or its territories."  *Id.* at 2.  As pertinent to this motion, it

16   directs the relevant officials within King County to take the following actions:

17   - "Ensure that all future leases, operating permits and other authorizations for
     commercial activity at King County International Airport contain a prohibition
18   against providing aeronautical or non-aeronautical services to enterprises engaged
     in the business of deporting immigration detainees (except for federal government
19   aircraft), to the maximum extent permitted by applicable law";

20   - "Develop procedures for exercising King County's rights under existing leases at
     King County International Airport to ensure strict lessee compliance with
21   applicable laws, ordinances, rules, regulations and policies of King County
     regarding human trafficking and the servicing of any aircraft engaged in the
22   business of deportation of immigration detainees, including, without limitation
     King County Code Chapter 2.15 and this Executive Order";
23
     - "Revise and formally adopt amendments to existing rules and regulations and King
24   County Code Title 15 [which addresses the "Airport"] in a manner consistent with
     King County Code Chapter 2.15 and this Executive Order."
25
     *Id.* ¶¶ 3–4, 6.
26

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - 3
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

These provisions forced FBOs at Boeing Field—businesses that lease property at the airport and provide services such as parking, fuel, lavatory service, and air stairs that are necessary to operating a charter flight[1]—to choose between serving ICE Air flights and compromising their operations at Boeing Field.  Lessees must "comply with all applicable laws, ordinances and regulations from any and all authorities having jurisdiction," King County International Airport (KCIA) General Terms and Conditions at 13 ("Modern Aviation Contract") (attached as Ex. 2 to Humphreys Decl.), and can be evicted if they do not do so, *id.* at 21.  Moreover, FBOs routinely approach King County to obtain modifications to their leases, and the County concedes that FBOs "would require compliance with the executive order" as a condition of doing so.  Deposition of John Parrott 171:1–7 (Nov. 9, 2022) ("Parrott Dep.") (relevant excerpts attached as Ex. 3 to Humphreys Decl.).[2]

On May 2, 2019, King County announced that, "[f]ollowing [issuance of the Executive Order], executives from Modern Aviation informed Executive Dow Constantine that the company will cease serving Swift Air flights carrying immigration detainees to and from [Boeing Field]."  Dow Constantine, *Operators at King County Airport Will Not Serve ICE Flights, Leaving No Ground Support for Immigration Transfers*," King County, Washington ("May 2 Press Release"), https://kingcounty.gov/elected/executive/constantine/news/release/2019/May/01-KCIA-lease.aspx (attached as Ex. 5 to Humphreys Decl.).  Modern Aviation explained to ICE's contract chartering agent, Classic Air Charter (which sub-contracts with aircraft operators like Swift Air, now known as iAero, to provide flight services to ICE), that "[o]ur interpretation of the Executive Order is that if we continue to allow the repatriation

---

[1] *See* FAA, Advisory Circular: "Exclusive Rights at Federally Obligated Airports" at 27 (Jan. 3, 2006), https://perma.cc/PVP3-Q6JK (last visited Dec. 14, 2022).

[2] For instance, Modern Aviation, the FBO that was servicing ICE Air flights at the time the Executive Order was issued, had a lease on a parcel of property at the airport that was expiring on July 31, 2020, a little over a year after the Executive Order's issuance.  Agreement and Amendment of Lease ("Modern Aviation Lease") at 1 ¶ 2 (attached as Ex. 4 to Humphreys Decl.).  The County's representative testified that he was unaware that this lease was expiring when the Executive Order issued.  Parrott Dep. 80:13–23.

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT - 4
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1   flights to use our FBO, King County will make it difficult for Modern to successfully operate at
2   [Boeing Field] in a manner that allows us to provide the level of service to our existing and
3   future customers . . . ." E-Mail from Eric Schneider to Paul Sottosanti, May 2, 2019 (attached
4   as Ex. 6 to Humphreys Decl.). Although the County claims it has not yet started to amend lease
5   practices, the Executive Order has already stopped Modern from servicing ICE Air flights.
6   Moreover, the County has represented that it would "resume the process of implementing this
7   executive order" if any FBO attempted to work with ICE in the future. Parrott Dep. 222:3–14.

## STANDARD OF REVIEW

9          Judgment on the pleadings is proper where the moving party establishes on the face of
10  the pleadings that no material issue of fact remains to be resolved and that it is entitled to
11  judgment as a matter of law. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d
12  1542, 1550 (9th Cir. 1989). Because this facial challenge to the Executive Order presents pure
13  questions of law, judgment on the pleadings is appropriate. Alternatively, the Court may treat
14  the Federal Government's motion as one for summary judgment. Summary judgment is proper
15  if a movant "shows that there is no genuine dispute as to any material fact and [that it] is entitled
16  to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## ARGUMENT

## I.     THE UNITED STATES IS ENTITLED TO JUDGMENT ON THE PLEADINGS.

19         The United States renews its previous motion for judgment on the pleadings for the
20  reasons stated in that motion, *see generally* Pl.'s Mot for J. on the Pleadings, ECF No. 15 ("Pl.'s
21  MJOP"); Pl.'s Reply in Support of Mot. for J. on the Pleadings, ECF No. 23, and for the
22  additional reasons stated herein. The Court did not reach the Federal Government's merits
23  arguments in its previous decision. Rather, the Court concluded that the United States had not
24  established Article III standing, or that its claims were not ripe for review. *See* Order Denying
25  MJOP at 4–7. The Federal Government respectfully maintains that, because the challenged
26  Executive Order facially discriminates against the United States, the Federal Government

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - 5
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1   unquestionably has suffered a cognizable injury from the Executive Order, and that the

2   Executive Order violates the Supremacy Clause.  Furthermore, requiring the United States to

3   submit to extensive discovery before receiving relief from a facially discriminatory law is

4   unwarranted for all the reasons discussed below.

5        **A.**     **The Federal Government's Claims Are Presently Justiciable.**

6        The Supreme Court has long recognized that "[t]he Federal Government can bring suit in

7   federal court against a State" to "ensur[e] the State['s] compliance with federal law."  *Seminole*

8   *Tribe of Fl. v. Florida*, 517 U.S. 44, 71 n.14 (1996) (citing *United States v. Texas*, 143 U.S. 621,

9   644–45 (1892)).  And that rule applies with equal force to the political subdivisions of the state,

10  such as counties and cities, when they violate the Supremacy Clause.  *See, e.g.*, *United States v.*

11  *City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010).

12       This Court previously expressed concerns that "[t]he County's Answer's allegations and

13  denials, if credited, indicate that the United States has not been injured by the Executive Order."

14  Order Denying MJOP at 5.  However, the Ninth Circuit's recent *Geo Group* decision—which

15  post-dates this Court's original ruling on the United States' motion—should dispel those

16  concerns.

17       In that case, the United States and the operator of a private immigration-detention

18  facility challenged AB 32, a California statute that prevented private entities with whom ICE

19  contracts from continuing to operate detention facilities.  *See Geo Group*, 50 F.4th at 751–52.

20  The court of appeals' decision explicitly addressed whether the plaintiffs, which included the

21  Federal Government, had standing.  California contended that the claims were not justiciable.

22  In California's view, any injury to the United States was speculative "because ICE may choose

23  not to extend its contracts, and any . . . injury . . . would not occur until at least 2024."  *Id.* at

24  753.  Yet, the Ninth Circuit had no difficulty concluding that the Federal Government's claims

25  could proceed.  It was enough that ICE's detention capacity in California was in privately

26  owned and operated facilities; that "ICE intends to continue to rely on private detention

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - 6
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

facilities"; and that AB 32, if it were to remain in effect, would be disruptive to ICE's California operations. *Id*. at 753–54. Similarly here, ICE relies on chartered flights to transport noncitizens; ICE Air intends to continue to rely on private air carriers going forward; and the Executive Order has already disrupted ICE Air's operations by placing burdens on its ability to obtain ground support at Boeing Field, which are faced by no other user of the airport.

The Court previously found it significant that the Executive Order seemed to "preclude[] enforcement against the United States" by exempting "federal government aircraft," and "concern[ed] third parties," rather than directly regulating the United States. Order Denying MJOP at 5. *Geo Group* makes clear, however, that any such distinction is legally irrelevant. As here, AB 32 did not directly regulate the Federal Government, nor could it be "enforced" against the United States. *Geo Group*, 50 F.4th at 751–52. The *en banc* Ninth Circuit, however, still concluded the United States had standing to bring suit, because AB 32 would prevent federal contractors from operating private detention facilities on ICE's behalf. *Id.* at 753–54.

*Geo Group* therefore dictates that the United States has standing to challenge the Executive Order, which disrupts Federal Government operations by pressuring contractors and airport lessees not to work with ICE Air. On its face, the Executive Order explicitly regulates "aircraft operated by charter operators who were providing services to" ICE. Compl, Ex. A at 1. It further directs County officials to develop procedures under existing leases to "ensure strict lessee compliance" with the Executive Order, and it requires changes to the airport Minimum Standards and the King County Code consistent with the Executive Order's objectives. *Id.* at 2. It thus imposes restrictions on private parties only when they perform tasks for the Federal Government.

Such unfavorable treatment constitutes a sufficient injury for standing purposes. The United States has a statutory obligation to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," 8 U.S.C. § 1231(g)(1), and "broad discretion . . . to choose the place of detention for deportable aliens," *Comm. of Cent. Am.*

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT - 7
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1    *Refugees v. INS*, 795 F.2d 1434, 1440 (9th Cir.), *amended by* 807 F.2d 769 (9th Cir. 1986).  ICE

2    Air flights further that obligation by "facilitat[ing] the movement of noncitizens within the

3    United States" to different detention facilities, as well as the "removal of noncitizens to

4    destinations worldwide."  *See* ICE Air Fact Sheet, *supra.*  Moreover, federal law gives ICE the

5    authority to enter contracts to arrange for those services.  48 C.F.R. § 3017.204-90.  Yet, the

6    Executive Order imposes restrictions only on entities that provide their services to the Federal

7    Government.  Those special restrictions give rise to the United States' cognizable injury, *i.e.*, a

8    "direct stake in the outcome of [this] litigation[.]"  *United States v. Students Challenging Regul.*

9    *Agency Procedures*, 412 U.S. 669, 689 n.14 (1973); *see also Geo Group*, 50 4th at 753–54.

10    Indeed, this harm is more substantial than many types of harm found sufficient for Article III

11    standing in the past.  *See id.* (citing cases in which the Supreme Court has "allowed important

12    interests to be vindicated by plaintiffs with no more stake in the outcome of an action than a

13    fraction of a vote, a $5 fine and costs, and a $1.50 poll tax" (citations omitted)).

14          This Court also expressed reservations regarding standing in its prior decision because

15    enforcement of the Executive Order was "limited to the 'maximum extent permitted by

16    applicable law[.]'"  Order Denying MJOP at 5.  However, that language does not permit the

17    County to avoid litigation.  The Ninth Circuit has emphatically rejected similar attempts to

18    evade judicial review through such representations:

19          [T]he cities asserted in their brief opposing the government's motion for judgment
            on the pleadings that they will enforce the ordinances only to the extent they are
20          consistent with federal law. As already explained, this does not cure the
            ordinances' infirmity because there is no exception to the doctrine of
21          intergovernmental immunity for state statutes consistent with federal law. And
            regardless, the cities' promise of self-restraint does not affect our consideration of
22          the ordinances' validity.

23    *City of Arcata*, 629 F.3d at 992; *see also Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1215

24    (9th Cir. 2010) (holding, in the First Amendment context, that state's promises not to prosecute

25    entities like the plaintiff "cannot overcome the flaws in the statute," because the court cannot

26    "uphold the statutes merely because the state promises to treat them as properly limited").

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - 8
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

Therefore, as a matter of law, the language in the Executive Order is a red herring.  It would be relevant only if the Executive Order were preempted or otherwise contrary to law, which it is, as discussed below.  Moreover, as demonstrated herein, the Executive Order has a current effect of deterring FBOs from working with the Federal Government.

Furthermore, the County's cannot avoid litigation by claiming that it may not enforce the Executive Order at all, depending on the wishes of future administrations and "whether ICE will be conducting immigration flights at that time."  Defs.' Objections, Answers, and Responses to Pl.'s First Set of Discovery Requests at 18 (attached as Ex. 7 to Humphreys Decl.).  Faced with a similar argument in *Geo Group*, the *en banc* Ninth Circuit dismissed the relevance of California's speculation that ICE "may choose not to extend its contracts" with private detention facilities and would not have to renew its contracts until four years after the statute was enacted. *Geo Group*, 50 F.4th at 754.

The holding in *Geo Group* is similar to the Supreme Court's conclusion in *Public Utilities Commission v. United States*, 355 U.S. 534 (1958), where the Federal Government successfully challenged a state statute that required common carriers to obtain approval from a state commission prior to offering discounted rates to the Federal Government.  There, the petitioner state commission argued that there was no justiciable Article III controversy because there was "no allegation that the Commission had done or threatened to do anything adverse to the United States or its agent."  *Id.* at 536.  The Court disagreed, recognizing a "present and concrete" controversy over "whether the United States has the right to obtain transportation service at such rates as it may negotiate or whether it can do so only with state approval."  *Id.* at 539.  Notably, the controversy here is much more acute than in *Public Utilities*, because the Executive Order functions not merely as a rate-setting measure, but also as a total present ban on private contractors and subcontractors working to facilitate transportation and deportation of detainees in ICE's custody.

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - 9
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1     A state or local government, moreover, cannot avoid judicial review simply by being

2  vague about what it will do or how long it will take to enforce a particular measure. *See Stolt-*

3  *Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) ("Where the inevitability

4  of the operation of a statute against certain individuals is patent, it is irrelevant to the existence

5  of a justiciable controversy that there will be a time delay before the disputed provisions will

6  come into effect."); *Geo Group*, 50 F.4th at 753–54 (finding a justiciable controversy even

7  though the injury "would not occur until at least 2024").[3]  And, for purposes of standing, it

8  makes little difference if the County does not intend to commence an enforcement action under

9  the Executive Order promptly; the threat of enforcement actions currently deters, and may

10  continue to deter, FBOs from working with ICE.  That is why preemption statutes, such as the

11  ADA, prohibit local governments from either "enact[ing]" *or* "enforc[ing]" measures "relating

12  to a price, route, or service of an air carrier."  49 U.S.C. § 41713(b)(1).

13     Thus, the decisions of the FBOs are, at best, a secondary consideration in this case,

14  because the United States is challenging special restrictions that apply to contractors only when

15  they work with ICE.  *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of*

16  *Jacksonville*, 508 U.S. 656, 666 (1993).  It is that action that injures the Federal Government,

17  regardless of what the FBOs choose in light of the burdens imposed by the Executive Order.

18  Even if the Court were to consider the actions of the FBOs, standing theories based on "the

19  predictable effect of Government action on the decisions on third parties" are cognizable, *see*

20  *also Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019), and the deterrent effect of the

21  Executive Order on FBOs servicing ICE Air flights was certainly predictable.

22

23

---

24     [3] For the same reason, the County cannot show that the Federal Government's claims are

25  not ripe for review.  As the Ninth Circuit explained when rejecting California's similar
justiciability arguments, "[w]hether framed as standing or ripeness," they "'boil down to the

26  same question'"—*i.e.*, whether there is an actual or imminent injury.  *Geo Group*, 50 F.4th at
753 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014)).

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - 10
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

**B.**     **Judgment on the Pleadings Is Appropriate as to the Federal Government's Intergovernmental Immunity Claim.**

It is equally clear that the United States is entitled to judgment on pleadings regarding the merits of its intergovernmental immunity claim, which the United States raised in its previous motion. *See* Pl's MJOP at 5–9. "'[T]he activities of the Federal Government are free from regulation by any state.'" *Hancock v. Train*, 426 U.S. 167, 178 (1976) (quoting *Mayo v. United States*, 319 U.S. 441, 445 (1943)). This intergovernmental immunity principle renders state or local regulation invalid if it seeks to regulate the United States directly, or if it discriminates against the Federal Government and those with whom it deals (*e.g.*, contractors). *See North Dakota v. United States*, 495 U.S. 423, 434–35 (1990) (plurality opinion).

As the Supreme Court reaffirmed this summer in *United States v. Washington*, "a state law discriminates against the Federal Government *or its contractors* if it singles them out for less favorable treatment, or if it regulates them unfavorably on some basis related to their governmental status." 142 S. Ct. at 1984 (cleaned up and emphasis added). The burden the state or local law imposes need not be "obstructive" or "significant" to run afoul of intergovernmental immunity. *United States v. California*, 921 F.3d 865, 880 (9th Cir. 2019). The burden can, as here, be "operational" in nature. *Id.* at 883 (striking down inspection requirements that "burden federal operations, and *only* federal operations"). There is no "de minimis exception to the doctrine of intergovernmental immunity," and "*any* burden [that] is imposed exclusively on the federal government[]" suffices. *Id.* at 883–84 & n.9.

The Executive Order violates the inter-governmental immunity doctrine. By its terms, it directs businesses that currently hold leases at Boeing Field, as well as those that may be interested in doing business with the County in the future, not to provide services to ICE lest they sacrifice their ability to operate out of the airport. Compl., Ex. A at 2. This sanction does not attach to servicing any other entities that seek to use Boeing Field, including other agencies

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT - 11
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

of the Federal Government—only ICE contractors and subcontractors.[4]

The case law confirms that the Executive Order is impermissible.  For example, in *Washington*, the Supreme Court addressed a 2018 Washington law that established a presumption of entitlement to workers' compensation for any contract worker with a covered medical condition at any time after performing cleanup work at the Hanford federal nuclear plant.  142 S. Ct. at 1982–83.  Because the Federal Government pays workers' compensation claims for federal contractors at the site, Washington's law increased workers' compensation costs for the Federal Government.  *Id.* at 1983.  The law applied only to contractors working for the Federal Government, *not* federal employees themselves or employees working in the vicinity of Hanford but for other employers.  *Id.*  The Supreme Court unanimously held that the Washington law violated the principles of intergovernmental immunity by "singling out the Federal Government for unfavorable treatment."  *Id.* at 1984.  Here, likewise, the Executive Order imposes restrictions only on lessees who support the transportation and deportation of immigration detainees in the custody of ICE, thereby treating the Federal Government less favorably than other airport customers.

Similarly, in *Boeing Company v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014), the California legislature passed a law establishing cleanup standards for radioactive and chemical contamination at a former government research site in southern California.  *Id.* at 837.  The Government had contracted with Boeing to undertake that cleanup.  *Id.* at 836.  Boeing sued California on an intergovernmental immunity theory.  *Id.* at 838.  The district court agreed that the statute constituted both a direct regulation of the Federal Government as well as discrimination against the Federal Government and its contractors, and the Ninth Circuit affirmed.  *Id.* at 838, 843.  On the latter point, the Ninth Circuit observed that the statute imposed a significantly higher cleanup standard for the federal site than the standard California

---

[4] Although the Executive Order purported to carve out "federal government aircraft," that detail is irrelevant because the protections of intergovernmental immunity reach those "with whom [the Federal Government] deals," as well.  *North Dakota*, 495 U.S. at 435.

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT - 12
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

applied elsewhere in the state.  *Id.* at 842.  The Ninth Circuit concluded that a contractor, such as Boeing, "cannot be subjected to discriminatory regulations because it contracted with the federal government . . . ."  *Id.* at 842–43.  Here too, lessees at Boeing Field cannot be treated differently from otherwise similarly situated lessees solely because they choose to work with ICE.

 *Geo Group* is also instructive on the merits.  In that case, the court concluded that AB 32 violated the Supremacy Clause because it would override the Federal Government's decision, pursuant to discretion conferred by Congress, to use private contractors to run its immigration detention facilities, giving California a "virtual power of review" over ICE's decisions.  *Geo Group*, 50 4th at 751 (quotation omitted).  The court explained that, "[w]hether analyzed under intergovernmental immunity or preemption, California cannot exert this level of control over the federal government's detention operations."  *Id.*  The same reasoning applies to the County's attempt to control ICE's decision to operate immigration flights out of Boeing Field.[5]  *See id.* at 750 ("[A]ny state regulation that purports to override the federal government's decisions about who will carry out federal functions runs afoul of the Supremacy Clause.").

*   *   *

 For all the reasons discussed above, the United States is presently injured by the Executive Order, and the United States is entitled to judgment on the pleadings on its Supremacy Clause claim.

## II. THE FEDERAL GOVERNMENT ALTERNATIVELY IS ENTITLED TO SUMMARY JUDGMENT.

 To the extent the Court believes that some material outside of the pleadings must be considered to resolve the question of standing, the United States moves for summary judgment.

---

[5] In contrast to recent cases involving unsuccessful intergovernmental immunity claims, the Executive Order explicitly applies to entities based on whether they choose to work with ICE.  *See GEO Group, Inc. v. City of Tacoma*, No. 3:18-cv-05233-RBL, 2019 WL 5963112 (W.D. Wash. Nov. 13, 2019); *Washington v. GEO Group, Inc.*, No. 3:17-cv-05806-RJB, 2018 WL 6448778 (W.D. Wash. Dec. 10, 2018).

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT - 13
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1    *See Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007)

2    (explaining that courts have discretion to convert a motion for judgment on the pleadings to a

3    motion for summary judgment).  As described below, the United States is entitled to judgment

4    as a matter of law, and there is no genuine dispute as to any material fact.

5          **A.**      **Uncontroverted Evidence Obtained in Discovery Confirms the Federal Government's Present Injury.**

6          As discussed above, the Ninth Circuit's recent *en banc* decision in *Geo Group* clearly

7    demonstrates that the United States has standing to pursue this litigation.  *See* Part I.A, *supra*.

8    There, the court of appeals confirmed that Article III standing and ripeness are not obstacles

9    when the Federal Government sues to prevent interference with immigration operations.  *See*

10   *Geo Group*, 50 F.4th at 753–54 (noting the disruption to ICE's operations based on AB 32).

11   The same conclusion is warranted here.

12         Although the United States maintains that the pleadings are sufficient to establish

13   standing and ripeness, the evidence obtained in discovery confirms that this case is justiciable.

14   The County has been explicit that its "goal" was to "ban[] flights of immigration detainees

15   chartered by Immigration and Customs Enforcement."  King County, *Executive Constantine*

16   *Directs Actions Against ICE Detainee Flights From King County Airport*, (Apr. 23, 2019),

17   https://kingcounty.gov/elected/executive/constantine/news/release/2019/April/23-ICE-

18   KCIA.aspx (April 23 Press Release) (last visited Dec. 14, 2022).  The County effectuated that

19   goal within two weeks of the issuance of the Executive Order when ICE Air lost the ability to

20   obtain ground support for its flights at Boeing Field.  *See* May 2 Press Release; Parrott Dep.

21   28:10–30:14 (acknowledging on behalf of the County that FBOs are required for various

22   essential ground support services).

23

24

25

26

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - 14
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

It is also now clear based on the evidentiary record that the Executive Order was the but-for cause of the termination of services to ICE.[6]  For example, Modern Aviation, the FBO that previously serviced ICE flights at Boeing Field, told ICE's contractor, Classic Air Charter, that the Executive Order would "make it difficult" for Modern to provide services at the airport if it maintained ICE's contractor as a customer.  Email from M. Carmen to E. Henry, A. Emmert, and E. Yapo, May 2, 2019 (attached as Ex. 8 to Humphreys Decl.).  Modern has explained that it has an ongoing need for the County's approval to provide a wide range of business activities at the airport, including the viability of its leases.  *See* Deposition of Mark Carmen 113:15–118:19, 189:13–191:2 (Aug. 18, 2022) (relevant excerpts attached as Ex. 9 to Humphreys Decl.).  The County may insist the FBOs made their choices "voluntarily," but, as explained above, FBOs have chosen, and may continue to choose, to avoid the risk of an enforcement action.  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) ("where threatened action by the government is concerned, we do not require a" party" to expose [itself] to liability before" the "basis for the threat" may be challenged); *see also* Part I.A, *supra*.  Modern itself has also acknowledged that the Executive Order "set in motion" ICE Air's inability to operate out of Boeing Field.  *See id.* 178:19–24.  Further, the County concedes that it would "resume the process of implementing [the] executive order" if an FBO attempted to work with ICE in the future, which all but precludes a change to the status quo.  Parrott Dep. 222:3–14.

In light of the recent decision in *Geo Group*, and the additional facts developed through discovery, the United States respectfully submits that its claims are presently justiciable and that the Court should proceed to the merits of the Federal Government's claims.

---

[6] In denying the Government's prior motion for judgment on the pleadings, the Court concluded that "the United States . . . has not shown that third parties' potential actions in the future were (or even will be) substantially motivated by the passage of the Executive Order," relying on a Ninth Circuit case discussing causation in the context of a tort claims suit against the Federal Government.  Order Denying MJOP at 6 (discussing *Mendia v. Garcia*, 768 F.3d 1009 (9th Cir. 2014)).  That showing is now evident on the record before the Court.

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT - 15
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

**B.** **Uncontroverted Record Evidence Also Requires Summary Judgment on the Merits of the United States' Intergovernmental Immunity Claim.**

As demonstrated above, recent Supreme Court and Ninth Circuit case law makes clear that the County cannot impose special restrictions that focus only on the Federal Government to impose its own policy preferences regarding ICE's operations. *See* Part I.B. In addition, the evidentiary record now demonstrates that imposing those impermissible restrictions was exactly what the Executive Order was designed to do. *See, e.g.*, Parrott Dep. 191:13–19 ("A. The goal of the executive order is to not have ICE flights, ICE chartered flights using Boeing Field. . . . . Q. Through amending the leasing practices?  A. Yes."). Indeed, by its terms, the Executive Order makes it more difficult for ICE Air, and *only* ICE Air, to obtain aeronautical services at Boeing Field by discriminating against those who wish to work with federal contractors and sub-contractors. Such targeting of federal operations by the County—essentially a Federal Government–only rule—creates the necessary operational burden to sustain an intergovernmental immunity claim. *California*, 921 F.3d at 883.

The United States anticipates the County may attempt to defend the Executive Order in several ways; none of which has merit. The United States expects the County to argue that the Executive Order is lawful because ICE has found alternative services out of Yakima Air Terminal that have not imposed additional burdens on the agency; that ICE did not thoroughly explore and exclude other alternatives to Boeing Field that are closer to Tacoma than Yakima Air Terminal, such as Seattle-Tacoma International Airport, Paine Field, Renton Municipal Airport, and a number of local military bases; and that ICE's contracts are structured such that ICE did not incur additional costs (and, indeed, might actually be saving money) when it was forced to leave Boeing Field. However, the availability of other arrangements or cost-efficient workarounds is immaterial, because, as discussed above, "*any* burden" is sufficient to run afoul of intergovernmental immunity when it focuses on the Federal Government; there is no *de minimis* exception to intergovernmental immunity. *Id.* at 883–84 & n.9. Such arguments also ignore that ICE's alternative arrangements necessitated by the Executive Order resulted in

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT - 16
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1    operational and safety burdens.  *See* Deposition of Robert Cordero 95:13–98:7, 170:10–171:24,

2    225:8–226:14 (Nov. 17, 2022) (relevant excerpts attached as Ex. 10 to Humphreys Decl.).[7]

3         The County may also argue that the Executive Order is justified because ICE Air flights

4    may be subject to disruptive protests.  Yet, that rationale does not excuse special restrictions

5    imposed only on the Federal Government.  For example, in *Movassaghi*, the State of California

6    passed a statute that targeted a federal research site "for a substantially more stringent cleanup

7    scheme than that which applies elsewhere in the State." 768 F.3d at 842–43.  The Ninth Circuit

8    held that "[t]he fact that [the research site] is especially contaminated does not render the law

9    non-discriminatory because California's generally-applicable environmental laws do not impose

10   the [statute's] radioactive cleanup standards." *Id.*  So too here.  The County has no "broad,

11   neutrally applicable rule," *City of Arcata*, 629 F.3d at 991, for determining when, due to a threat

12   of protests, lessees should be subject to the restrictions outlined in the Executive Order.  Other

13   entities that utilize Boeing Field, moreover, have also been the targets of protests, such as

14   Starbucks and Boeing.  *See, e.g.*, Farah Jadran, *Demonstrators Gather Outside Starbucks*

15   *Headquarters in Seattle to Protest 'Investor Day' Event*, KING 5 NEWS (Sept. 13, 2022),

16   https://www.king5.com/article/news/local/seattle/seattle-capitol-hill-starbucks-strike-investor-

17   day-protest/281-1fe7b818-1bd8-4b1e-b465-add8bac859cc (last visited Dec. 14, 2022); Dominic

18   Gates, *Workers Protest Angrily Near Boeing's Everett Plant Against Vaccination Mandate*, THE

19   SEATTLE TIMES (Oct. 16, 221), https://www.seattletimes.com/business/boeing-

20   aerospace/workers-protest-angrily-at-boeings-everett-plant-against-vaccination-mandate/ (last

21   visited Dec. 14, 2022).  Yet, the Executive Order's restrictions focus only on ICE activities.  *See*

22   Parrott Dep. 217:18–218:23.  The County's "heckler's veto" rationale—imposing additional

23

24        [7] Nor does the Executive Order merely "reference" federal activities in an innocuous
     way such that it would avoid the reach of the Supremacy Clause; it imposes regulatory burdens
25   that effectively shut ICE Air flights, and no others, out of Boeing Field. *California*, 921 F.3d at
     881.  ICE is the only entity subject to the sort of challenges in obtaining an FBO for chartered
26   flights at Boeing Field imposed by the Executive Order, a facility that is, otherwise, open for use
     by the public at large.  Parrott Dep. 32:2–9.

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - 17
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1   regulations on the Federal Government because its activities may be unpopular—would nullify

2   the Supremacy Clause where it is needed the most: when the Federal Government seeks to

3   enforce federal law in the face of local disapproval.  The Court should therefore enter judgment

4   in the Federal Government's favor and enjoin the Executive Order from any current or future

5   enforcement.

6       **C.    The Executive Order Violates the Airline Deregulation Act.**

7       The United States is also entitled to summary judgment in its favor for the independent

8   reason that the Executive Order conflicts with federal law (*i.e.*, is preempted) and is therefore

9   unenforceable, because it intrudes on the deregulated space created by the Airline Deregulation

10  Act.  The ADA provides that a "political subdivision of a State . . . may not enact or enforce a

11  law, regulation, or other provision having the force and effect of law related to a price, route or

12  service of an air carrier that may provide air transportation under this subpart."  49 U.S.C.

13  § 41713(b)(1).  The Ninth Circuit has "held that the terms 'price,' 'route' and 'service' were

14  used by Congress in the public utility sense; that is, 'service . . . refers to such things as the

15  frequency and scheduling of transportation, and to the selection of markets to or from which

16  transportation is provided.  '"Airlines" "rates" and "routes" generally refer to the point-to-point

17  transport of passengers. . . . [R]outes refers to courses of travel.'"  *Air Transport Ass'n of Am. v.*

18  *City & Cnty. of S.F.*, 266 F.3d 1064, 1071 (9th Cir. 2001) (quoting *Charas v. Trans World*

19  *Airlines, Inc.*, 160 F.3d 1259, 1265–66 (9th Cir. 1998) (en banc)).  A state or local law is

20  "related to" a price, route, or service if it has "[1] a connection with, or [2] reference to" a price,

21  route, or service.  *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 (1995).

22      This is a straightforward ADA preemption case.  The Executive Order "curtai[ls] an air

23  carrier's business decision to offer a particular service in a particular market" by preventing that

24  carrier, when it works with ICE Air, from receiving necessary ground support at Boeing Field.

25  *Arapahoe Cnty. Pub. Airport Auth. v. F.A.A.*, 242 F.3d 1213, 1222 (10th Cir. 2001) (rejecting

26  "any contention that 'service' . . . is not intended to include transportation itself").  The

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - 18
*United States v. King County, WA*, No. 2:20-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1  Executive Order also "extends to route determinations because the carrier cannot conduct

2  regular operations over any route involving the banned airport," and "a prohibition on operating

3  over any route is no less a regulation of routes than a restriction on the number of routes a

4  carrier can operate from an airport." *Id.* By regulating both the routes and the services that

5  ICE's contractors and sub-contractors can provide, the Executive Order is preempted by the

6  ADA.

7      King County cannot avail itself of the presumption against preemption reserved for

8  market participants. "When a state or local government buys services or manages property as a

9  private party would, it acts as a 'market participant,'" and a presumption against preemption

10  applies. *Airline Serv. Providers Ass'n v. L.A. World Airports ("ASPA")*, 873 F.3d 1074, 1080

11  (9th Cir. 2017). The Ninth Circuit uses a two-prong test in applying this exception. If a

12  challenged governmental action is either (1) "undertaken in pursuit of the 'efficient procurement

13  of needed goods and services,' as one might expect of a private business in the same

14  situation[,]" or (2) is of a sufficiently "narrow scope . . . [to] defeat an inference that its primary

15  goal was to encourage a general policy rather than [to] address a specific proprietary

16  problem[,]" the "market participant" exception applies. *Id.* (quoting *Johnson v. Rancho*

17  *Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1023 (9th Cir. 2010)).

18      The Executive Order promotes a general regulatory policy of King County. It asserts

19  that King County has put in place "effective policies . . . to guarantee that [it] does not partner

20  nor collaborate with" federal immigration authorities. Compl., Ex. A at 1. Further, the

21  Executive Order's assertion that permitting ICE to use the airport "*could* adversely affect the

22  willingness or ability of other persons to use, or engage in businesses at," Boeing Field, leading

23  to "a negative effect on the financial sustainability" of the airport is unsubstantiated. Compl.,

24  Ex. A at 2 (emphasis added). The County did not base its restrictions on any findings gathered

25  through consultations with FBOs, other airport tenants, or other airport users about the business

26  impact of ICE Air's operations out of Boeing Field, and the County acknowledged that "there

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - 19
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

didn't appear to be any reason that those activities in and of themselves would impact any of the other users." Parrott Dep. 95:12–22.

Because the County is therefore not a market participant, it also cannot demonstrate that the Executive Order is an exercise of its "proprietary powers" over Boeing Field, which the ADA exempts from its preemptive scope. 49 U.S.C. § 41713(b)(3). Although Congress did not define this term, "[c]omments in the legislative history . . . refer to 'normal proprietary functions . . . such as the establishing of curfews and landing fees which are consistent with other requirements in Federal law.'" *Air Transport Ass'n of Am. v. City & Cnty. of S.F.*, 992 F. Supp. 1149, 1188 (N.D. Cal. 1998) (quoting 123 Cong. Rec. 30, 595–96 (Sept. 23, 1977)), *aff'd in relevant part*, 266 F.3d 1064 (9th Cir. 2001). Courts applying this exception have concluded "airports are exercising their proprietary powers when they issue noise regulations, restrict access based on airport capacity, and impose perimeter rules that redirect long-haul carriers to other airports." *Id.* The Executive Order is far removed from such concerns. It broadly restricts entities who work with ICE from accessing Boeing Field on the same terms as the rest of the public. Such local restrictions on the "routes" and "service" air carriers can offer to customers, including the Federal Government, are preempted by the ADA. Accordingly, the Court should enjoin the Executive Order and enter judgment in the Federal Government's favor.

### D. The Executive Order Conflicts with the United States' Conveyance of Boeing Field to King County.

The Court should alternatively enter summary judgment on the grounds that the Executive Order violates certain binding covenants to which King County became subject when it assumed title to Boeing Field after the Second World War. *See* Amendments to Surplus Property Act of 1944 § 2, Pub. L. No. 80-289, 61 Stat. 678, 679–80 (Jan. 3, 1944) ("The United States shall at all times have the right to make nonexclusive use of the landing area of the airport at which the surplus property is located or used[.]"). Just months before the County issued the Executive Order, the County agreed with the Federal Government on this point:

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT - 20
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1
2
3
4

> County officials have repeatedly told UWCHR researchers that due to the
> airport's federal obligations, they lack authority to stop the flights.  These
> obligations stem from the deed transferring ownership of the airport from the
> federal government to King County at the conclusion of World War II, and from
> grants received by the airport through the federal government's Airport
> Improvement Program (AIP), which King County received most recently in 2018.

*See* Center for Human Rights, Univ. of Wash., *Hidden In Plain Sight: King County*

*Collaboration with ICE Air Deportation Flights at Boeing Field* (Apr. 23, 2019),

https://jsis.washington.edu/humanrights/2019/04/23/ice-air-king-county/ (footnote omitted)

("Ctr. for Human Rights Report"); Pl.'s Third Set of Discovery Requests and Defs.' Objections,

Answers, and Responses Thereto at 9–10 (attached as Ex. 11 to Humphreys Decl.) (conceding

the County "articulated a legal argument, similar to the one put forward by ICE in this matter,

that the County lacked authority to prohibit government aircraft from using Boeing Field for

deportation related flights").  The County has since reversed its position.  Although it asserts

today that it has never "banned" ICE Air flights, the stated "goal" of the Executive Order was to

end ICE Air flights at Boeing Field.  April 23 Press Release, *supra*.  The County was right the

first time: its obligations under the Instrument of Transfer preclude such a policy.

The Federal Government "may bring suits to enforce [its] contracts and protect [its]

property," and "ha[s] the same right to have [them] protected by the local laws that other

persons have."  *Cotton v. United States*, 52 U.S. (11 How.) 229, 231 (1850).  That includes

actions to "enjoin interference with an easement expressly reserved" in a land grant.  *S. Idaho

Conf. Ass'n of Seventh Day Adventists v. United States*, 418 F.2d 411, 416 (9th Cir. 1969)

(affirming judgment in quiet title action in favor of the Government with respect to enforcement

of an easement in a land patent).  Under Washington law, "[t]he extent of the right acquired [by

an express easement] is to be determined from the terms of the grant properly construed to give

effect to the intention of the parties."  *Brown v. Voss*, 715 P.2d 514, 517 (Wash. 1986).

Injunctive relief is appropriate to enforce the terms of an express easement.  *Snyder v. Hayes*,

217 P.3d 787, 791 (Wash. Ct. App. 2009) (affirming trial court's entry of an injunction

preventing use of certain nonconforming vehicles on an easement road).

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - 21
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

The "Instrument of Transfer" executed by King County and the United States on May 26, 1948, provides that "the United States of America . . . through any of its employees or agents shall at all times have the right to make nonexclusive use of the landing area of the airport at which any of the property transferred by this instrument is located or used, without charge." Compl., Ex. B at 16. Under Washington law, that constitutes an easement, which "is a right, distinct from ownership, to use in some way the land of another, without compensation[.]" *City of Olympia v. Palzer*, 728 P.2d 135, 137 (Wash. 1986) (quoting *Kutschinski v. Thompson*, 138 A. 569, 573 (N.J. 1927)); *see also Miami-Dade Cnty. v. United States*, No. 01-1930-CIV, 2003 WL 22992283, at *4 (S.D. Fla. Dec. 4, 2003) (holding that identical terms in a similar instrument executed between the United States and a county to transfer title to an airport gave the United States "an easement or license" with respect to the property conveyed).

The Executive Order violates this easement. By bringing an end to ground support for ICE Air flights, the Executive Order denies ICE the right to "at all times . . . make nonexclusive use of the landing area" at Boeing Field. A charter operator cannot reliably park, fuel, load, and unload a plane without ground support, all of which are necessary to make use of the landing area. The easement notably guarantees a right of "*use* of the landing area of the airport" by the Federal Government "*through* any of its employees or agents." Read in context, the term "through" is "a function word to indicate means, agency, or intermediacy." *Through*, *Merriam-Webster*, https://perma.cc/BD3Q-VWMW. ICE Air flights use airports through the efforts of ICE's employees, contractors, and subcontractors (including private contractors acting on ICE Air's behalf). The flights are paid for by the Federal Government, directed and coordinated by federal employees carrying out the mandates of federal immigration law according to schedules and routes set by immigration officials, and carry individuals in federal immigration custody. *See* ICE Air Fact Sheet, *supra*.

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - 22
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**

1       As the County recognized in 2019, it lacks the authority to do what it has done here.  *See*

2    Ctr. for Human Rights Report, *supra*.  The Court should enter judgment for the United States on

3    this alternative ground.

4                                            **CONCLUSION**

5           For these reasons, the Court should grant the United States' motion, enter judgment in

6    the United States' favor, and enjoin enforcement of the Executive Order.

7           Dated:  December 14, 2022                    Respectfully submitted,

8                                                        BRIAN M. BOYNTON
                                                         Principal Deputy Assistant Attorney
9                                                        General

10                                                       ALEXANDER K. HAAS
                                                         Director
11
                                                         JACQUELINE COLEMAN SNEAD
12                                                       Assistant Branch Director

13                                                       */s/ Bradley P. Humphreys*
                                                         BRADLEY P. HUMPHREYS
14                                                           (D.C. Bar. No. 988057)
                                                         MICHAEL J. GERARDI
15                                                           (D.C. Bar No. 1017949)
                                                         BENJAMIN T. TAKEMOTO
16                                                           (D.C. Bar No. 308075)
                                                         Trial Attorneys
17                                                       U.S. Department of Justice
                                                         Civil Division, Federal Programs Branch
18                                                       1100 L St. NW
                                                         Washington, D.C. 20005
19                                                       Tel: (202) 305-0878
                                                         Fax: (202) 616-8460
20                                                       E-mail: bradley.humphreys@usdoj.gov

21                                                       *Attorneys for Plaintiff*

22

23

24

25

26

MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT - 23
*United States v. King County, WA*, No. 2:20-cv-203 RJB

**U.S. DEPARTMENT OF JUSTICE**
**1100 L St., NW**
**Washington, DC 20005**
**Tel: (202) 616-0680**